# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00147-CV

**Commission for Lawyer Discipline, Appellant**

**v.**

**Omar Weaver Rosales, 201701087, 201700840, 201700279, 201700153, 201607308, 201607292, 201701948, 201702052, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. D-1-GN-17-005008, HONORABLE R. H. WALLACE, JR., JUDGE PRESIDING**

## O P I N I O N

The Commission for Lawyer Discipline appeals from the district court's order dismissing the Commission's disciplinary action against Omar Weaver Rosales under the Texas Citizens Participation Act (TCPA). Tex. Civ. Prac. & Rem. Code §§ 27.001–.011. Based on our conclusion that the TCPA applies to the Commission's disciplinary proceeding against Rosales, but that the Commission met its burden of establishing by clear and specific evidence a prima facie case for each element of its claim against Rosales, we reverse and remand for further proceedings.

## Background

In December 2016, Rosales began sending demand letters to various medical providers across the state asserting that the recipients' websites violated the Americans with

Disabilities Act (ADA), 42 U.S.C. Section 12101 et seq., and rules promulgated under the ADA.

The following is representative of the letters Rosales sent:

**CENTER FOR VETERANS ACCESS**
PO BOX 6429
AUSTIN, TX 78762-6429
(512) 520-1919
(512) 309-5360 Fax
WWW.CENVETACCESS.ORG

JANUARY 23, 2017

VIA US MAIL CERTIFIED RRR . . .

CLINIC DIRECTOR
PATIENT EMERGENCY ROOM, PLLC
101331 I-10 EAST
BAYTOWN, TX
77521

**RE:    LAWSUIT ALLEGING VIOLATIONS OF TITLE 42 USC §12101, §12181, KNOWN AS THE AMERICANS WITH DISABILITIES ACT (ADA)**

Dear Clinic Director:

I hope this letter finds you in good regards.  Enclosed is a copy of the Federal lawsuit to be filed in the Southern District of Texas, Houston Division, against your clinic.  This lawsuit alleges violations of the Americans with Disabilities Act, Title 42 U.S.C. §12101 and §12181 (known as the "ADA") that occur on your company's website.

As you are aware, the Americans with Disabilities Act applies to websites. Disabled individuals have the right to access and obtain information about medical clinics, doctor's offices, and urgent care centers.  Disabled individuals, such as myself, use these websites to obtain and book suitable medical treatment.  Under Federal law, your website must comply with the new requirements of the ADA and WCAG 2.0 AA (Web Content Accessibility Guidelines).

2

I have completed a survey of your website for ADA compliance. Your website failed. I have attached the ADA review of your website that lists the areas where your site is not in compliance with Federal law and Title III of the ADA.

In addition, to receive Federal funds through Medicaid, Medicare, and the Children's Health Insurance Partnership (CHIP), you have agreed to comply with all Federal Rules and Regulations. <u>Since your website does not comply with Federal law, you must immediately self-report to the Department of Health and Human Services (DHHS) and forfeit any Federal funds received until you have completed recertification.</u>

Our Initial Demand to settle this unfiled lawsuit is $2000. Should you refuse to enter settlement negotiations, I will have no choice but to file the attached lawsuit against your company. I will also contact DHHS and discuss the possibility of a separate civil suit under *Qui Tam* doctrine to obtain reimbursement of Federal Tax dollars that you improperly obtained from the government. Please contact me, so that we may resolve these issues.

Sincerely,

<u>/s/ O. Rosales</u>
O. Rosales
Attorney-at-law
ceo.cenvetaccess.org

(Grammar, underlining, and capitalization in original.)

Seven medical providers who received these letters filed grievances against Rosales with the Office of the Chief Disciplinary Counsel of the State Bar of Texas. Ultimately, the Chief Disciplinary Counsel brought a disciplinary proceeding against Rosales on behalf of the Commission for Lawyer Discipline, a committee of the State Bar of Texas, in Travis County District Court as provided for by the Texas Rules of Disciplinary Procedure. *See* Tex. Rules Disciplinary P. R. 2.10–.15 (grievance process and resolution options); R. 3.01–.08 (district-court proceedings), *reprinted in* Tex. Gov't Code, tit. 2, subtit. G, app. A-1. In its suit, the Commission alleged that

Rosales's ADA/website letters constituted professional misconduct because the letters violated the Texas Disciplinary Rules of Professional Conduct. Tex. Disciplinary Rules Prof'l Conduct R. 1.01–9.01, *reprinted in* Tex. Gov't Code, tit. 2, subtit. G., app. A (Tex. State Bar R. art. X, § 9). Specifically, the Commission alleged that the letters violated the rules prohibiting "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation," *id.* R. 8.04(a)(3); "practic[ing] under a trade name," *id.* R. 7.01(a); "stat[ing] or imply[ing] an ability to influence improperly a government agency or official," *id.* R. 8.04(a)(5); threatening medical providers with possible disciplinary actions in order to gain an advantage, *see id.* R. 4.04(b)(1); and asserting frivolous claims, *see id.* R. 3.01. According to the Commission, Rosales's letters contained inaccurate and deceptive statements regarding the ADA and its applicability to websites and regarding the origin and legal effect of the Web Content Accessibility Guidelines ("WCAG guidelines") referenced in the letters.

Rosales responded to the Commission's disciplinary action by filing, among other pleadings, a motion to dismiss under the TCPA. Rosales asserted that the Commission's suit against him was based on his exercise of the right to free speech in the website demand letters, which Rosales contends were "communication[s] made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code § 27.001(3) (defining "exercise of free speech"); *see id.* § 27.003(a) (allowing party to move for dismissal of claims that are "based on, relate[ ] to, or [are] in response to a party's exercise of the right of free speech, right to petition, or right of association"). In support of his motion, Rosales attached various documents, including the letter reproduced above and an

4

affidavit explaining, stated generally, that he had a reasonable belief that the ADA and WCAG guidelines applied to websites when he sent his letters.

In response, the Commission argued that Rosales's motion to dismiss should be denied because the TCPA does not apply to lawyer-discipline cases, *see id.* § 27.010(a) (exempting certain enforcement actions), and that even if the TCPA did apply, the Commission had established a prima facie case against Rosales, *see id.* § 27.005(b)–(c) (requiring dismissal unless nonmovant establishes by clear and specific evidence a prima facie case for each essential element of the claim in question). In the alternative, the Commission asked for the opportunity to conduct further discovery. *See id.* § 27.006(b) (allowing trial court to allow specified and limited discovery related to motion to dismiss). After a hearing, the district court granted Rosales's TCPA motion and dismissed the Commission's suit. This appeal ensued.

## TCPA

The Texas Legislature passed the TCPA to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *Id.* § 27.002. The statute provides a procedural mechanism that permits a party to file a motion to dismiss a "legal action" if the action "is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association." *Id.* § 27.003(a). Once such a movant establishes by a preponderance of the evidence that the suit "is based on, relates to, or is in response to the party's exercise of" one of the enumerated rights, the trial court must dismiss the legal action unless

5

the nonmovant "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id*. § 27.005; *see S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018) (discussing steps and burden-shifting in TCPA analysis). Even if the nonmovant carries its burden under section 27.005(c), however, the trial court must dismiss the legal action if the movant establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim. Tex. Civ. Prac. & Rem. Code § 27.005(d). In determining whether such motions to dismiss should be granted, courts are to consider the pleadings and supporting and opposing affidavits on which the claim or defense is based. *Id.* § 27.006(a). The TCPA also provides specific exemptions to its applicability, including, at issue here, an exemption for enforcement actions brought by certain government entities. *See id.* § 27.010(a).

Appellate review of issues regarding interpretation of the TCPA is de novo. *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018).

**Discussion**

The Commission raises four issues on appeal. First, it contends that (1) the district court erred in granting Rosales's motion to dismiss because the TCPA does not apply to the Commission's disciplinary proceedings against lawyers. In the alternative, the Commission argues that, if the TCPA does apply, the district court erred in granting the motion to dismiss because (2) the Commission met its burden of establishing by clear and specific evidence a prima facie case for each essential element of its claims, or (3) the Commission was entitled to additional discovery before the district court decided the motion. Finally, the Commission challenges (4) the district court's award

6

of attorney fees. Because they are dispositive of this appeal, we address only the Commission's first two issues.

**TCPA applicability**

The Commission contends that the TCPA does not apply to its lawyer-discipline actions because those proceedings are exempt under the TCPA's exemption for government enforcement actions; because the Commission is protected by immunity; and because of our decision in *Sullivan v. Texas Ethics Commission*, 551 S.W.3d 848 (Tex. App.—Austin 2018, pet. filed). We address each of these grounds in turn.

*1. Exemption for government enforcement actions*

The TCPA exempts from its applicability "an enforcement action that is brought in the name of the state or a political subdivision of the state by the attorney general, a district attorney, a criminal district attorney, or a county attorney." Tex. Civ. Prac. & Rem. Code § 27.010(a). The Commission argues that its lawyer-discipline proceedings fall under this exemption because they are brought in the name of the Commission, which is a part of the State Bar of Texas, a subdivision of the State,[1] to enforce the Texas Disciplinary Rules of Professional Conduct. We disagree.

Although the Commission is charged with the important job of disciplining attorneys who violate the Texas Disciplinary Rules of Professional Conduct, neither the Commission nor the Chief Disciplinary Counsel is included among the four entities specifically listed in the TCPA's

---

[1] *See* Tex. Gov't Code § 81.011(a) ("The state bar is a public corporation and an administrative agency of the judicial department of government.").

enforcement-action exemption—i.e., "the attorney general, a district attorney, a criminal district attorney, or a county attorney." *Id.* As such, and assuming that the Commission's disciplinary proceeding against Rosales is a government enforcement action, *see State v. Harper*, 562 S.W.3d 1, 11–14 (Tex. 2018) (analyzing the meaning of "enforcement action" in TCPA), the Commission's action against Rosales is not exempt from the TCPA under the plain language of subsection 27.010(a). *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008); *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) ("[W]hen possible, we discern [legislative intent] from the plain meaning of the words chosen.").

The Commission insists that the Legislature could not have intended to exclude its disciplinary proceedings from this exemption, arguing that a conclusion to the contrary requires an "overly strict reading of the concluding list of entities." But "the plain language of a statute is the surest guide to the Legislature's intent," *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012); *see also In re Office of the Attorney General*, 422 S.W.3d 623,629 (Tex. 2013) ("We take the Legislature at its word, and the truest measure of what it intended is what it enacted."), and in this provision, the Legislature has unambiguously limited the TCPA's enforcement-action exemption to the four specifically enumerated entities, *see In re Office of the Attorney General*, 422 S.W.3d at 629 ("[U]nambiguous text equals determinative text," and "'[a]t this point, the judge's inquiry is at an end.'") (quoting *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 652 (Tex. 2006)).

To construe this exemption as the Commission suggests—i.e., exempting from the TCPA's application government enforcement actions brought by entities other than those listed in

8

the exemption—would require us to either ignore or add words to the text that the Legislature enacted in subsection 27.010(a). We decline to do so. *See Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009) ("Enforcing the law as written is a court's safest refuge in matters of statutory construction, and we should always refrain from rewriting text that lawmakers chose . . . ."); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen."). If the Legislature had intended to exempt from the TCPA government enforcement actions without regard to which legal authority brought the case, it would not have included the last fifteen words of the exemption. Likewise, if the Legislature had intended to exempt lawyer-discipline enforcement actions brought by the Commission through the Chief Disciplinary Counsel, it could have included text to that effect.

The Commission argues relatedly that such a construction of subsection 27.010(a) is an improper application of the negative-implication canon of statutory construction—also referred to as *expressio unius est exclusio alterius* or "the expression of one thing implies the exclusion of others." We disagree. The specificity of the Legislature's enumeration of the legal authorities that may bring an exempted government enforcement action is a textbook example of the Legislature's intent to exclude others. *See Uniguard Sec. Ins. Co. v. Schaefer*, 572 S.W.2d 303, 307 (Tex. 1978) ("When specific exclusions or exceptions to a statute are stated by the Legislature, the intent is usually clear that no others shall apply."); *see also United States v. Giordano*, 416 U.S. 505, 513–14 (1974) (holding that because statute named two types of high-ranking officials, all other officials were excluded).

9

The Commission further contends that enforcing the plain meaning of this exemption leads to absurd results. *See Molinet v. Kimbrel*, 356 S.W.3d 407, 411 (Tex. 2011) ("The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results."). But the "absurdity doctrine" only comes into play if an as-written statute "leads to patently nonsensical results" that "a rational Legislature" could not have intended. *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013). And while credible policy arguments can be made regarding the folly or wisdom of subjecting the Commission to the TCPA's dismissal procedures, we cannot conclude that applying the intended safeguards of the TCPA to the lawyer-discipline process is a result that no reasonable legislature could have intended. *See id.* As such, we must adhere to the plain meaning of the TCPA's text and leave the policy making to the Legislature.

The Commission argues that enforcement abilities would be adversely affected by the TCPA's dismissal procedures. Nevertheless, the Texas Supreme Court has noted that the TCPA's purpose of safeguarding constitutional rights is not inconsistent with subjecting the State to the procedural strictures of the TCPA. *See Harper*, 562 S.W.3d at 19. Further, when it enacted the TCPA, the Legislature was presumably aware of the existence of government enforcement actions and procedures—including the Commission's authority to bring lawyer-discipline actions in district court. *See* Tex. Gov't Code §§ 81.071 ("Each attorney admitted to practice in this state . . . is subject to the disciplinary . . . jurisdiction of the . . . Commission for Lawyer Discipline . . . ."), .076 (authorizing Commission to ask Chief Disciplinary Counsel to "investigate and prosecute suits"); *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed

10

to have been enacted by the legislature with complete knowledge of the existing law and with reference to it."). In this statutory context, the plain language of the exemption does not encompass Commission disciplinary proceedings brought by the State Bar's Chief Disciplinary Counsel, and we cannot agree that a plain-language reading of the exemption leads to absurd results.

2. *Immunity*

The Commission further argues that the TCPA does not apply to its disciplinary proceedings because the Commission is entitled to "absolute immunity." In support of this argument, it points to the provision providing that the TCPA "does not abrogate or lessen any other . . . immunity available under other constitutional, statutory, case, or common law or rule provisions," Tex. Civ. Prac. & Rem. Code § 27.011(a), and to Rule 17.09 of the Texas Rules of Disciplinary Procedure, which provides:

> All members of the Commission, the Chief Disciplinary Counsel (including Special Assistant Disciplinary Counsel appointed by the Commission and attorneys employed on a contract basis by the Chief Disciplinary Counsel), all members of Committees, all members of the Board of Disciplinary Appeals, all members of the District Disability Committees, all officers and Directors of the State Bar, and the staff members of the aforementioned entities are immune from suit for any conduct in the course of their official duties. The immunity is absolute and unqualified and extends to all actions at law or in equity.

Tex. Rules Disciplinary P. R. 17.09. According to the Commission, "[a]n obvious purpose of the immunity provided by Rule 1[7].09 is to allow the disciplinary system to discharge their official duties without fear of being sued or liable for monetary judgments, such as attorneys' fees that can be awarded in [TCPA] proceedings."

11

The immunity granted in Rule 17.09, however, is official immunity that shields *governmental employees* from personal liability so that they are encouraged to vigorously perform their official duties. *See id.*; *Telthorster v. Tennell*, 92 S.W.3d 457, 460–61 (Tex. 2002) ("Official immunity is an affirmative defense that shields governmental employees from personal liability so that they are encouraged to vigorously perform their official duties." (citing *Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex. 1994)). It is not the same as sovereign immunity, which protects the State, and government entities like the State Bar, from lawsuits for money damages unless the immunity has been waived. *See, e.g.*, *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). Application of the TCPA's procedural mechanisms would not implicate the immunity offered by Rule 17.09—i.e., immunity from suits alleging misconduct by officials. Instead, it would potentially implicate sovereign immunity should attorney fees be assessed against the Commission under the TCPA. The Texas Supreme Court has recently held that sovereign immunity does not protect the State from properly assessed TCPA attorney fees:

> Because the state should not be suing to prevent its own citizens from participating in government—especially when it lacks even a prima facie case against them—and because when it does sue, it risks paying only attorney's fees (rather than damages or some other uncapped sum), abrogating the state's sovereign immunity in the TCPA context does not present any grave danger to the public fisc.

*Harper*, 562 S.W.3d at 19 (citing *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011) (per curiam) ("[T]he doctrine of sovereign immunity originated to protect the public fisc from unforeseen expenditures that could hamper governmental functions . . . .")).

We hold that the immunity invoked by the Commission does not bar application of the TCPA to the Commission's disciplinary proceeding against Rosales.

3. *Sullivan v. Texas Ethics Commission*

The Commission next asserts that the TCPA does not apply to its lawyer-discipline proceedings based on our decision in *Sullivan v. Texas Ethics Commission*. We disagree. *Sullivan* presented a fact-specific situation in the context of an underlying statutory framework pertaining to the Texas Ethics Commission's enforcement of lobbyist registration rules, and the holding was accordingly narrow. *See* 551 S.W.3d at 851–52. Sullivan filed suit against the Ethics Commission to appeal its final order determining that he had failed to register as a lobbyist and assessing a civil penalty against him. *Id.* On Sullivan's own motion, the trial court realigned the parties, naming the Ethics Commission as plaintiff and Sullivan as defendant. *Id.* When the Ethics Commission then amended its pleadings to reflect the change in party alignment, Sullivan, then a defendant, moved to dismiss the Ethics Commission's pleading under the TCPA. The trial court denied his motion. *Id.* In affirming the trial court's decision, this Court emphasized the unique circumstances of the case presented—i.e., that Sullivan initiated the lawsuit in the district court and, had he not done so, the Ethics Commission's final administrative order against him would have remained effective and fully enforceable—and held that:

> In light of this specific statutory framework, the only reasonable way to harmonize the TCPA and [the relevant statutes] is to conclude that the TCPA's catch-all term "legal action" does not encompass de novo appeals of [Ethics] Commission orders enforcing the lobbyist-registration statute wherein the Commission seeks no new relief but prays only that the district court uphold the Commission's previous violation and penalty determinations.

13

*Id.* at 855 & n.5. In sum, *Sullivan* held that the TCPA did not apply because the underlying suit was not a "legal action" under the TCPA.

Here, by contrast, the Commission filed suit against Rosales in the district court to obtain, for the first time, an adjudication regarding whether Rosales violated the Texas Disciplinary Rules of Professional Conduct and, if so, how Rosales should be disciplined for such professional misconduct. *See* Tex. R. Disciplinary P. R. 3.01 (describing procedure for filing disciplinary petition). When it filed its suit, the complaints against Rosales had not been resolved and there was no final or enforceable order regarding whether Rosales had violated any rules. Absent the filing of the proceeding and an ultimate judgment by the district court, there would not be such an adjudication. *See id.* R. 3.01. Given this procedural posture and the fact that the Commission's petition sought affirmative legal relief against Rosales, the Commission's disciplinary suit against Rosales plainly falls under the TCPA's broad definition of "legal action" as "a lawsuit, cause of action, petition, complaint . . . or any other judicial pleading or filing that requests legal or equitable relief," Tex. Civ. Prac. & Rem. Code § 27.001(6), and under the supreme court's interpretation of that phrase as "appear[ing] to encompass any procedural vehicle for the vindication of a legal claim," *see Harper*, 562 S.W.3d at 8, 12 (also noting that "it would be difficult to write a more capacious definition"). Accordingly, *Sullivan* does not control our decision here.

We overrule the Commission's first issue.

**Prima facie case**

Having determined that the TCPA applies to the Commission's proceeding against Rosales, we turn to the Commission's second issue, in which it asserts that the district court erred

14

in granting the TCPA motion to dismiss because the Commission met its burden of "establish[ing] by clear and specific evidence a prima facie case for each essential element of the claim in question."² Tex. Civ. Prac. & Rem. Code § 27.005(c) (providing that trial court "may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question"). In this context, "clear" means "unambiguous, sure, or free from doubt," and "specific" means "explicit or relating to a particular named thing." *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding). "Prima facie case" means evidence that is legally sufficient to establish a claim as factually true if it is not countered. *Id.* In other words, a prima facie case is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* The "evidence" the trial court "shall consider" in these inquiries expressly includes "the pleadings and supporting and opposing affidavits stating the facts on which the liability is based," and the TCPA contemplates primary reliance on such proof. *See* Tex. Civ. Prac. & Rem. Code § 27.006(a).

The Commission sued Rosales for professional misconduct. The elements of a professional-misconduct claim include establishing that the respondent (1) is an attorney licensed to practice law in the state of Texas who (2) engaged in acts and conduct that violate the Texas Disciplinary Rules of Professional Conduct. *See* Tex. Rules of Disciplinary P. R. 3.01 (requiring

---

² The Commission does not contest the district court's determination that it sued Rosales in response to his exercise of his constitutional right to free speech, petition, or association, the first step of a TCPA analysis. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b); *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018) (discussing steps in TCPA analysis).

15

Commission to set forth in its disciplinary petition the specific rule violated and description of the acts and conduct that gave rise to the claim of professional misconduct).

The Commission's pleadings and exhibits provide clear and specific evidence of a prima facie case of its professional-misconduct claim against Rosales. In its petition, the Commission asserted, and Rosales does not dispute, that Rosales is an attorney licensed to practice law in Texas. The Commission also alleged that the ADA/website demand letters that Rosales sent out to seven medical providers violate the Texas Disciplinary Rules of Professional Conduct as follows:

- Rule 8.04(a)(3) prohibits a lawyer from "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation." Tex. Disciplinary Rules Prof'l Conduct R. 8.04(a)(3). The Commission pleaded that Rosales's letters violate this provision by (1) stating categorically that the ADA applies to websites and that the ADA requires compliance with the WCAG guidelines when in actuality there is a split in authority as to whether the ADA applies to websites; (2) referring to the WCAG guidelines as rules that the recipient's website has failed to comply with when in actuality the WCAG are guidelines, not laws; and (3) suggesting that the WCAG establish a policing agency for the ADA and ADA compliance when in actuality the WCAG are suggested guidelines maintained by a non-governmental entity. The Commission also pleaded that Rosales's use of the trade name "Center for Veterans Access" in a letter is deceptive because it suggests some relationship to the U.S. Department of Veterans Affairs.

- Rule 7.01(a) prohibits a lawyer from "practic[ing] under a trade name" or under "a name that is misleading as to the identity of the lawyer or lawyers practicing under such name." Id. 7.01(a). The Commission pleaded that Rosales's letter to complainant Patients Emergency Room violates this provision because it was sent by Rosales under the trade name "Center for Veterans Access." The Commission also pleaded that Rosales's use of the trade name "Center for Veterans Access" is misleading because it suggests some relationship to the U.S. Department of Veterans Affairs.

- Rule 8.04(a)(5) prohibits a lawyer from "stat[ing] or imply[ing] an ability to influence improperly a government agency or official." Id. 8.04(a)(5). The Commission pleaded that Rosales's letters violate this provision in that the letters threaten to involve DHHS in further

16

civil litigation and have federal funds removed from the recipients' businesses based on the alleged failure to comply with non-governmental guidelines.

- Rule 4.04(b)(1) prohibits an attorney from threatening "criminal or disciplinary charges solely to gain an advantage in a civil matter." *Id.* 4.04(b)(1). The Commission pleaded that Rosales's letters violate this provision because the letters threaten to inform DHHS of any noncompliance in order to have the recipients' funding removed if the recipients fail to negotiate a settlement with Rosales. The Commission argues that because DHHS can impose disciplinary sanctions against noncompliant entities servicing patients receiving Medicare benefits, Rosales's letter violates the prohibition against threatening disciplinary action.

- Rule 3.01 prohibits an attorney from asserting frivolous claims. *See id.* 3.01. The Commission asserted that Rosales's letters violate this provision because Rosales lacks standing to bring a claim under the ADA. In support, the Commission cites to a federal district court order dismissing Rosales's complaint on the grounds that Rosales lacked standing to bring ADA claims because Rosales did not demonstrate "if and how his disabilities prevented him from using [a business]'s website." *Rosales v. Concentra Operating Corp.*, No. 5:16-CV-01070 (W.D. Tex. Feb. 13, 2017).

Rosales does not dispute that he sent the letters described by the Commission. In fact, he included one of the letters as an exhibit to his pleadings in the district court. Likewise, Rosales acknowledges in his pleadings that he was aware of the fact that the extent of ADA applicability to websites is, as yet, unsettled.

Given the existence of the letter in the record, with its related demonstrable facts, and the Commission's detailed pleadings regarding the basis of its claims, we hold that the Commission carried its burden under the TCPA to establish by clear and specific evidence a prima facie case that Rosales engaged in professional misconduct by violating the Texas Disciplinary Rules of Professional Conduct. Accordingly, we sustain the Commission's second issue. Having done so, we need not address its remaining issues regarding the opportunity to conduct additional discovery and the imposition of attorney fees.

17

**Defense to Commission's professional-misconduct claim**

Once a TCPA nonmovant establishes a prima facie case for its claim, the movant may still obtain a dismissal of the nonmovant's legal action under the TCPA if the movant "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." Tex. Civ. Prac. & Rem. Code § 27.005(d).[3] On appeal, Rosales contends that he established such a defense and, as a result, the district court did not err in dismissing the Commission's action. We disagree.

As noted, the Commission sued Rosales for professional misconduct, which requires showing that Rosales (1) is an attorney licensed to practice law in the state of Texas who (2) engaged in acts and conduct that violate the Texas Disciplinary Rules of Professional Conduct. *See* Tex. Rules of Disciplinary P. R. 3.01 (requiring Commission to set forth in its disciplinary petition the specific rule violated and description of the acts and conduct that gave rise to the claim of professional misconduct). Rosales admits that he is an attorney licensed to practice law in the state of Texas, and the Commission, as described in detail above, alleged that Rosales's demand letter violated rules 3.01, 4.04(b)(1), 7.01, 8.04(a)(3), 8.04(a)(5). Thus, for Rosales to be entitled to

---

[3] A preponderance of the evidence is that quantum of evidence allowing a determination that is more likely true than not. *See In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding) (noting that "preponderance-of-the-evidence standard . . . is a fact-finder's determination that the plaintiff's version of the events is more likely than not true"); *see also Murff v. Pass*, 249 S.W.3d 407, 411 n.1 (Tex. 2008) (noting that standard requires "the greater weight of the credible evidence").

18

dismissal of the Commission's professional-misconduct claim against him, he must establish by a preponderance of the evidence that he did not violate the Texas Disciplinary Rules of Professional Misconduct.

Rosales did not establish by a preponderance of the evidence that his demand letter does not violate rule 8.04(a)(3)'s prohibition against "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation." According to the Commission's pleadings, Rosales's letter violated this rule by (1) stating categorically that the ADA applies to websites and that the ADA requires compliance with the WCAG guidelines when in actuality there is, at best, a split in authority as to whether or how the ADA applies to websites; (2) referring to the WCAG guidelines as rules that the recipient's website has failed to comply with when in actuality the WCAG are guidelines established in the private sector, not rules promulgated under the ADA; and (3) suggesting that the WCAG guidelines constitute a policing agency for the ADA and ADA compliance when in actuality the WCAG guidelines are a set of suggested guidelines maintained by a non-governmental entity. The Commission also pleaded that Rosales's use of the trade name "Center for Veterans Access" in a letter is deceptive in violation of this rule because it suggests some relationship to the U.S. Department of Veterans Affairs.

On appeal, Rosales contends that the statement in his affidavit that he "did not lie, commit fraud, act deceitfully or assert any misrepresentation of law fact in connection with the Website Demand Letters" established a defense to the Commission's allegations that he violated rule 8.04(a)(5). But this sort of statement does not establish a defense to the Commission's allegation here because it is self-serving and conclusory—meaning that it is not even sufficient to raise a fact

19

issue, much less sufficient to establish the matter by a preponderance of the evidence. *See In re Lipsky*, 460 S.W.3d at 592 ("Bare, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA."); *see also, e.g.*, *Ryland Grp. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) ("Conclusory affidavits are not enough to raise fact issues."). Further, despite stating in his affidavit that he "believe[s] that websites" must comply with the ADA and that the WCAG guidelines are applicable standards, Rosales's demand letters state those beliefs as facts. And regardless of whether Rosales "believes" that the ADA applies and that the WCAG guidelines establish ADA standards, the question of whether the ADA applies to websites is, as Rosales admits in his briefing to this Court, an unsettled issue that courts across the country disagree on. To that extent, his statement that "the Americans with Disabilities Act applies to websites" is, at best, a misrepresentation and, at worst, dishonest and deceitful. *See* Tex. Disciplinary Rules of Prof'l Conduct R. 8.04(a)(3). Likewise, regardless of whether Rosales "believes" that the WCAG guidelines are applicable ADA standards, the bottom line is that those guidelines are private-industry standards with no official status relating to the ADA. *See Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 907–08 (9th Cir. 2019) (acknowledging that WCAG guidelines are not official and compulsory); Letter from the U.S. Department of Justice, Stephen E. Boyd, Assistant Attorney General, to the Honorable Ted Budd, U.S. House of Representatives, (Sept. 25, 2018) (acknowledging that DOJ has not yet adopted specific regulations for ADA website compliance and explaining that "noncompliance with [WCAG guidelines] does not necessarily indicate noncompliance with the ADA"). To that extent, Rosales's statement in the letter that "Under Federal law, your website must comply with the new requirements

20

of the ADA and WCAG" is, at best, a misrepresentation and, at worst, deceitful. Accordingly, Rosales failed to establish by a preponderance of the evidence that he did not violate Rule 8.04(a)(3). And because he did not do so, he cannot have established by a preponderance of the evidence a defense to the Commission's claim that he engaged in professional misconduct.

## Conclusion

Based on our determination that the TCPA applies to the Commission's disciplinary proceeding against Rosales, that the Commission met its TCPA burden of establishing by clear and specific evidence a prima facie case for each essential element of its professional-misconduct claim against Rosales, and that Rosales did not establish by a preponderance of the evidence each essential element of a valid defense to the Commission's claim, we reverse the district court's order dismissing the Commission's action, including the order's imposition of attorney fees, and remand for further proceedings.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Kelly and Smith
  Concurring opinion by Justice Kelly

Reversed and Remanded

Filed: April 3, 2019

21