# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00725-CV

**Omar Weaver Rosales, Appellant**

**v.**

**Commission for Lawyer Discipline, Appellee**

## FROM THE 201ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-18-002039, THE HONORABLE BRANDON BIRMINGHAM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Commission for Lawyer Discipline filed a petition asserting that appellant Omar Weaver Rosales had violated various disciplinary rules. Rosales sought dismissal of the suit under the Texas Citizens' Participation Act (TCPA), *see* Tex. Civ. Prac. & Rem. Code §§ 27.001-.011. The trial court denied the motion to dismiss, and Rosales filed this interlocutory appeal. *See id.* § 27.008. On appeal, he argues that the TCPA applies; that even assuming the Commission established a prima facie case of each element of its claims, a preponderance of the evidence establishes that Rosales did not violate the rules as alleged in the Commission's petition; and that the Commission's claims are barred by res judicata. He further asserts that he is entitled to attorney's fees, costs, and sanctions under the TCPA. *See id.* § 27.009. As explained below, we affirm the trial court's order denying Rosales's motion to dismiss.

## BACKGROUND

This is not the first time these parties have appeared before this Court. The Commission filed an earlier disciplinary proceeding against Rosales in state court in 2017, asserting that he had committed professional misconduct related to demand letters he had served on several businesses in Texas. The trial court dismissed the proceeding pursuant to the TCPA, but this Court reversed, determining that although the TCPA applied, the Commission had met its burden of establishing a prima facie case of its claim. *See Commission for Lawyer Discipline v. Rosales*, 577 S.W.3d 305, 309, 318-19 (Tex. App.—Austin 2019, pet. denied) (*Rosales I*).[1]

This proceeding arises from six of the more than 300 federal lawsuits Rosales has filed on behalf of Jon Deutsch, asserting violations of the Americans With Disabilities Act (ADA) and other related statutes. In 2016, a federal magistrate judge issued a lengthy sanctions order in those six federal cases, determining that Rosales had committed professional misconduct and assessing sanctions for that behavior—that order was affirmed by the federal district judge and the 5th Circuit. *Deutsch v. Henry*, No. A-15-CV-1238-LY-ML, 2016 WL 7165993, at *23 (W.D. Tex. Dec. 7, 2016), *aff'd*, No. 1:15-CV-490-LY, 2017 WL 5652384 (W.D. Tex. Mar. 28, 2017), *aff'd sub nom. Deutsch v. Phil's Icehouse, Inc.*, 716 F. App'x 361 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 193 (2018). The magistrate determined that Rosales had repeated in numerous court filings false and abusive statements about opposing counsel James Harrington, conduct the magistrate described as "habitual, bad faith misconduct" that demeaned Harrington and the

---

[1] In 2019, after *Rosales I* was decided, the legislature amended the TCPA to provide that the act does not apply to "a disciplinary action or disciplinary proceeding brought under Chapter 81, Government Code, or the Texas Rules of Disciplinary Procedure." *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 9, 2019 Tex. Gen. Laws 684, 686 (codified at Tex. Civ. Prac. & Rem. Code § 27.010). However, those amendments do not apply to this proceeding, which was filed before the amendment's effective date. *See id*. § 11, 2019 Tex. Gen. Laws at 687.

federal judicial system; fabricated an email to make it look like it had been sent to Harrington by changing the "recipient" field and then attached a copy of the altered email to a court filing to support an assertion that Harrington had not responded to the email; and filed a groundless police report and application for a temporary restraining order alleging that Harrington was stalking him. *Id.* at *17-19. The magistrate referred the matter to the Western District of Texas Disciplinary Committee, and a year later, a federal judge issued a disciplinary order adopting the findings of misconduct set out in the district disciplinary committee's report and suspending Rosales for three years from practicing in the United States District Court for the Western District of Texas. *In re Disciplinary Complaint Against Rosales*, No. SA 16 MC 1326 DAE, 2017 WL 8180454, at *1 (W.D. Tex. July 11, 2017), *aff'd sub nom. In re Rosales*, 716 F. App'x 364 (5th Cir. 2018).[2] In that order, the court found that Rosales had violated various rules of professional conduct and

> acted intentionally and in bad faith when, among other things, he: (1) took out an ex parte TRO against Harrington for alleged stalking, terroristic threat, and intimidation, later determined to be baseless, to disrupt or avoid appearing at a hearing in front of [United States Magistrate] Judge Lane against Harrington; (2) knowingly fabricated, according to credible forensic testimony, an email that served as an evidentiary exhibit to a brief filed with the Court, and failed to retract this falsified evidence or take reasonable remedial measures; (3) knowingly and repeatedly made false and abusive statements to and regarding Harrington, even after admonition from Judge Lane throughout the litigation; and (4) blatantly disregarded and violated the [Texas Disciplinary Rules] and Local Rules for attorney behavior through motion practice and in hearings and interactions with the Court and with Harrington as demonstrated in the above-discussed misconduct.

*Id*. at *24-28.

---

[2] As a result of the federal disciplinary order, Rosales was also suspended for three years from practicing law in New York. *See generally Matter of Rosales*, 176 A.D.3d 107 (N.Y. App. Div. 2019) (per curiam).

In 2018, while *Rosales I* was pending in this Court, the Commission filed this disciplinary action pursuant to the State Bar Act, *see* Tex. Gov't Code §§ 81.001-.156, seeking disciplinary action and alleging Rosales had acted in bad faith in those six federal lawsuits by: filing frivolous pleadings; falsely alleging that Harrington was stalking Rosales and had made a terroristic threat against him; taking positions that unreasonably increased costs and delayed resolution of the cases; failing to comply with court orders to make witnesses available for deposition; filing "multiple baseless requests for sanctions" against Harrington; making "numerous false and/or inflammatory statements" about Harrington in pleadings; and fabricating an email and offering it as an exhibit attached to a pleading. The Commission asserted that Rosales had violated several rules of professional conduct. *See* Tex. Disciplinary R. Prof'l Conduct 3.01 (lawyer shall not bring or defend proceeding or assert or controvert issue without non-frivolous basis for doing so), .02 (lawyer shall not unreasonably increase costs or delay resolution of case), .03(a)(5) (lawyer shall not knowingly use or offer evidence he knows is false), .04(b) (lawyer shall not falsify evidence, advise witness to give false testimony, or offer compensation to witness contingent upon content of testimony or outcome of case), 4.04(a) (lawyer shall not use means that lack substantial purpose other than to embarrass, delay, or burden third party), (b)(1) (lawyer shall not present or threaten to present criminal or disciplinary charges solely to gain advantage in civil matter), 8.04(a)(3) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), *reprinted in* Tex. Gov't Code, tit. 2, subtit. G, app. A. Rosales again sought dismissal pursuant to the TCPA. The trial court denied his motion to dismiss, and Rosales filed this appeal.

**DISCUSSION**

In their briefs, the parties first debate whether the TCPA applies to the Commission's claims. However, this Court held in *Rosales I* that the version of the TCPA in effect when this case was filed applies to proceedings such as this one, *see* 577 S.W.3d at 313-15, and we decline the Commission's invitation to revisit the issue, instead limiting our consideration to Rosales's other two issues: whether the Commission's complaints are barred by res judicata and whether Rosales established by a preponderance of the evidence that he had not violated the rules.

*Res Judicata*

We first consider Rosales's claim that under the doctrine of res judicata, the fact that he was sanctioned and disciplined by the federal courts bars the Commission from bringing this proceeding.

"The party relying on the affirmative defense of res judicata must prove (1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action." *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Rosales insists that there "is privity between the [Commission] and the parties in the prior federal lawsuit" because the "claims of both parties ***derived from the same source***" and because the Commission's claims rely "solely on the affidavit of the same attorney who prosecuted the federal lawsuit."

As noted by the Commission, however, federal courts do not have jurisdiction to act against an attorney's state law license, and the federal disciplinary proceeding only took action against Rosales's ability to practice in federal court. *See Kaufman v. Commission for*

*Lawyer Discipline*, 197 S.W.3d 867, 872 (Tex. App.—Corpus Christi-Edinburg 2006, pet. denied) (attorney admitted to practice in Texas state courts is "subject to the disciplinary jurisdiction of the Texas Supreme Court and the Commission for Lawyer Discipline, a committee of the State Bar"). "Attorney disciplinary proceedings are among those judicial proceedings invested with sufficiently important State interest to warrant a federal court to abstain from exercising jurisdiction to avoid interference in State judicial proceedings." *Id.* The federal court confined itself to considering Rosales's misconduct affecting his ability to practice in federal court, not his Texas law license, whereas the Commission's petition presents purely state law matters involving Rosales's Texas license to practice law. *See id.*

Furthermore, although the Western District requires attorneys who practice before it to comply with Texas's professional rules, *see* W.D. Tex. Loc. R. AT-7(a), the Western District may only take action against an attorney's ability to practice in the district, *see id.* R. AT-7(d). Here, on the other hand, the Commission seeks to take action against Rosales's state law license, an issue that could not have been litigated in the federal proceeding.

Finally, we disagree with Rosales that the Commission's claims brought in this case could and should have been brought in its earlier disciplinary proceeding. The Commission's petition in *Rosales I* was filed in September 2017 and involved statements made in demand letters sent to various businesses in Texas. The trial court signed its order of dismissal in February 2018, and the Commission appealed in early March 2018. The Commission's petition in this proceeding, filed in late April 2018, involved allegations related to misconduct during litigation in six federal cases. Thus, the claims made in *Rosales I* were not the same as those made in this matter, nor do they arise out of the same trial court proceedings or the same facts. Nor have we located any rule or caselaw that would require the Commission to

6

amend its pleadings as new, unrelated allegations of misconduct arise so as to consolidate every disciplinary allegation into one omnibus proceeding.

We hold that res judicata does not bar the underlying state disciplinary proceeding.[3]  *See Kaufman*, 197 S.W.3d at 872.

<u>*Rosales's Defense to Commission's Claims*</u>

We next consider Rosales's contention that, assuming the Commission established a prima facie case, an issue he does not dispute, he established a defense to the Commission's claims because he showed he had not violated the professional rules as alleged.

Under the version of the TCPA in effect at the time, Rosales was only entitled to dismissal if he "establishe[d] by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim."  Act of May 24, 2013, 83d Leg., R.S., ch. 1042, § 2, 2013 Tex. Gen. Laws 2499, 2499.  As explained by our sister court, this means:

> it is the defendant's burden to establish a valid defense to the plaintiff's claim. Therefore, in order to defeat the plaintiff's establishment of a prima facie claim, the defendant must establish, as a matter of law, each essential element of at least one valid defense as to each of the nonmovant plaintiff's claims.

*Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 708 (Tex. App.—Amarillo 2018, pet. denied). The standard of review employed in considering whether a movant established a valid defense so as to be entitled to dismissal is "essentially equivalent to a motion for summary judgment on an

---

[3] We also decline to hold that because Harrington's affidavit was the basis of this disciplinary proceeding and because he is opposing counsel in the federal cases out of which this proceeding arose, there is privity between Harrington, his clients, and the Commission. Harrington, as the complainant who reported Rosales's conduct to the Commission, is a potential witness but not a party to the Commission's disciplinary proceeding. *See Daniels v. Commission for Lawyer Discipline*, 142 S.W.3d 565, 571 (Tex. App.—Texarkana 2004, no pet.).  It is the Commission that is "the party petitioner" and that "exercises all rights characteristically reposed in a client."  *Id.*

affirmative defense," meaning we should consider the pleadings and evidence in favor of the nonmovant, taking evidence favorable to the nonmovant as true and indulging reasonable inferences and resolving doubts in favor of the nonmovant. *Id.* We then ask whether, when the evidence is so viewed, the movant established that there is no genuine issue of material fact as to his entitlement to the defense. *Id.*

Rosales does not refer to our standard of review. Instead, he simply states that his affidavit established that his conduct did not violate the various rules. In his affidavit, Rosales stated that: in litigating his 385 lawsuits, he "zealously and passionately represented" his client; he faced "stiff opposition from Harrington and the other opposing counsel"; he never took "any action or step in the litigation that was designed to harass opposing counsel or delay the litigation"; "[e]verything I did I felt was justified by existing law or was a good faith argument to change the law"; he "steadfastly denied" that he had fabricated an email and presented it in court; Harrington and his office staff "regularly" referred to him as "El Sapo," which is Spanish for "toad" and "a derogatory comment tied to nothing more than my Hispanic heritage"; Harrington "threatened or verbally attacked" Rosales on multiple occasions; Harrington told Rosales "that he knew the car I drove, which I believe is a threat that he knows what I drive, where I live, and that he was watching or following me"; Harrington's statements made Rosales fear for his safety and the safety of his family and caused Rosales to file complaints against Harrington; and Harrington told Rosales he would "get even" with him and that he would file a disciplinary complaint if Rosales did not withdraw the complaints made against Harrington.

The Commission presented an affidavit by Harrington that tells a very different story. Harrington asserted that because he believed Rosales and his client were abusing the ADA and "running a money-making scam" by suing hundreds of small business "with boiler-plate

8

pleadings and then settling with them for a few thousand dollars," Harrington began defending some of those businesses pro bono, at which time Rosales "became extremely vitriolic, caustic, and personally abusive." Harrington once mentioned that he knew Rosales drove an expensive car, which he knew from observing Rosales at the court house, and based on that statement, Rosales falsely claimed that Harrington was stalking him and had made a terroristic threat, making a police report and obtaining a temporary restraining order, which was dissolved after a hearing. Harrington also averred that Rosales had falsified an email and filed it as evidence in court, an allegation that the federal courts found to be true, and filed baseless and harassing motions and made personal attacks against Harrington (including calling Harrington racist, anti-Semitic, and a "lying draft dodger"), which served no purpose other than to increase litigation costs, delay resolution of the cases, embarrass Harrington, and disrupt the lawsuits. The Commission also produced as evidence the federal magistrate's sanctions order and the federal disciplinary order, both of which support Harrington's version of events and set out in detail Rosales's misconduct.

Rosales's self-serving averments that he was simply being a zealous advocate who had been victimized by Harrington in no way "establish" his defense of innocence. Indeed, as we stated in *Rosales I*, a statement such as those made in Rosales's affidavit "does not establish a defense to the Commission's allegation here because it is self-serving and conclusory—meaning that it is not even sufficient to raise a fact issue, much less sufficient to establish the matter by a preponderance of the evidence." 577 S.W.3d at 318; *see In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015) ("Bare, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA."); *see also Ryland Grp. v. Hood*, 924 S.W.2d 120, 122 (Tex.

9

1996) ("Conclusory affidavits are not enough to raise fact issues," "[t]hey are not credible, nor susceptible to being readily controverted," and "[a]n interested witness' affidavit which recites that the affiant 'estimates,' or 'believes' certain facts to be true will not support summary judgment."). Further, Rosales's assertions of innocence are rebutted by the Commission's evidence, including two federal courts' findings of fact.

Assuming without deciding that Rosales's assertion that he did not commit misconduct can be raised as an "affirmative defense" under the TCPA, the evidence does not establish by a preponderance of the evidence that Rosales had not committed the misconduct alleged in the Commission's petition. Rosales therefore did not show his entitlement to dismissal under the TCPA. We overrule Rosales's claim that he established a defense to the Commission's claims.

## CONCLUSION

Having overruled Rosales's arguments on appeal, we affirm the trial court's denial of his motion to dismiss pursuant to the TCPA.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Kelly and Smith
  Concurring Opinion by Justice Kelly

Affirmed

Filed: April 22, 2020

10