**Opinion issued September 14, 2021**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-21-00007-CV

————————————

**ADRIENNE C. BIBBY, Appellant**

**V.**

**RONALD BIBBY, Appellee**

On Appeal from the Probate Court
Galveston County, Texas
Trial Court Case No. PR0074207

# O P I N I O N

This case involves two parents who are co-guardians of their incapacitated adult son. Ronald Bibby applied to remove Adrienne Bibby as co-guardian of their son, Erik James Bibby. Adrienne moved for dismissal under the 2019 version of the Texas Citizens Participation Act. The trial court denied Adrienne's TCPA motion to

dismiss. On appeal, Adrienne challenges the trial court's order denying her TCPA motion.

We affirm.

## Background

### *The Court Appointed a Guardian Ad Litem*

This dispute involves the guardianship of Erik, an autistic, non-verbal adult and the son of Ronald and Adrienne. Ronald and Adrienne were once married but divorced when the probate court appointed them as co-guardians of Erik in June 2016. In July 2019, Adrienne sought the appointment of a guardian ad litem because she believed that Erik's physical and mental health had been compromised while he was in his father's care. In August 2019, the probate court appointed E. Baker as guardian ad litem. Baker investigated Erik's living conditions, found that the co-guardianship was not in Erik's best interest, and recommended that Ronald serve as sole guardian.

### *Adrienne Filed a Police Report*

Adrienne contacted the League City Police Department and filed a report, alleging that Erik was sexually assaulted by a family member. Baker investigated Adrienne's allegations. He personally observed Erik and issued a written report with his findings:

> Erik appears to be a well loved and cared for 25-year-old male. Erik is severely autistic and is unable to communicate orally or in writing.

2

However, Erik is at times able to communicate via a "letter board" by using his finger to point out individual letters, thus, spelling out words and sentences. This process is very useful to Erik, but does appear to be difficult and tiring at times. Erik currently requires 24-hour care and supervision.

He also observed that Erik could not manage his financial affairs or meet his personal needs.

Baker's investigation "revealed little to no changes in [Erik] and/or negative impacts resulting from the recent changes in his father's home." Baker also noted that Erik had "adapted very well to the recent changes" and that he "may potentially benefit from the additional support and interaction that is taking place in the home." Based on his investigation, Baker recommended that Ronald be appointed as Erik's sole permanent guardian.

After thoroughly documenting the "strained" history between Ronald and Adrienne, Baker concluded that the existing co-guardianship was "no longer a viable option for Erik and his parents" because their dispute "creat[ed] significant conflict" and "negatively impact[ed] Erik's day-to-day care and routines." "[C]ontinuation of the existing co-guardianship," Baker opined, "will only result in additional stress and turmoil for Erik and his parents."

***Ronald Applied for Removal of Adrienne as Co-guardian***

After Adrienne's complaint to the police, Ronald applied to remove her as co-guardian under Texas Estates Code section 1203.052. Ronald alleged that Erik had spent an equal amount of time with him and Adrienne without incident until Ronald bought a home with his girlfriend, L.M. Stimpson. According to Ronald, Adrienne complained about Erik's care as a means "to interfere in [Ronald's] relationship" with Stimpson.

Ronald contended that Adrienne "filed a false report with the League City Police Department wherein she alleged that [Erik] was sexually assaulted by [Stimpson's] daughter." He also contended that Adrienne claimed "that [Erik] told her about the assault on a word board." Ronald alleged that Adrienne's sexual-assault claims were "baseless" because Stimpson's daughter was in San Marcos, Texas and her other children were at work. He argued that Adrienne violated Texas Estates Code section 1203.052(a)(4) and (a)(6) by filing a "false police report," which constituted "gross misconduct or mismanagement in the performance of her duties" and "abuse, neglect, and exploitation" of Erik. Ronald attached Baker's report to the removal application.

***Adrienne Responded to Ronald's Application and Filed a TCPA Motion***

Adrienne responded to the removal application and denied committing gross misconduct or mismanagement in the performance of her duties as co-guardian of

Erik, engaging in abusive, neglectful, or exploitative conduct against Erik, and filing a false police report. Adrienne also moved to dismiss the removal application under the TCPA, contending that Ronald filed the removal application "based on, related to, or in response to [her] exercise of the right of free speech [and] right to petition." Adrienne asserted that Ronald filed the removal application "in an attempt to intimidate and silence her," and his "campaign of legal intimidation" implicated her right to petition and right to speak freely. And Adrienne argued that Ronald could not meet his burden of establishing a prima facie case for her removal as co-guardian.

As evidentiary support, Adrienne included her own declaration contending that, on the evening of May 2, 2020, Erik "reported" to her that he had been sexually assaulted. She also included a police report dated May 7, 2020. The "NARRATIVE" section of the police report noted, "Assault F/V: 25[-] year[-] old male was [a]ssaulted by family member."

### The Court Denied Adrienne's TCPA Motion

The parties filed various competing motions to strike, written objections, and responses. The probate court did not rule on either party's motions or objections. The probate court held a two-day hearing on Adrienne's TCPA motion. After the hearing, the probate court denied Adrienne's TCPA motion to dismiss. Adrienne filed this interlocutory appeal.

*Ronald Moved to Dismiss this Appeal*

While this appeal has been pending, Ronald moved to dismiss the appeal, arguing that this Court lacks jurisdiction over this case because an application to remove a guardian is not a "legal action" under the TCPA. The relevant inquiry for jurisdiction over this TCPA appeal is whether a person may appeal from an interlocutory order of a probate court. The answer is yes. Under section 51.014(a)(12), appellate courts have jurisdiction over certain interlocutory orders, including an order denying a motion to dismiss filed under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE §§ 51.014(a)(12), 27.003. Because the probate court denied Adrienne's TCPA motion to dismiss, we have jurisdiction over this interlocutory appeal. *See generally In re Estate of Calkins*, 580 S.W.3d 287, 292–96 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (discussing interlocutory appellate jurisdiction of probate court's order denying TCPA motion to dismiss). We therefore deny Ronald's motion to dismiss this appeal.

## TCPA Motion to Dismiss

In her first issue, Adrienne asserts that the TCPA applies because Ronald filed the removal application "based on, related to, or in response to" her exercise of the right to petition and right of free speech in filing a police report. Ronald contends that the TCPA does not apply because (1) the removal application is not a "legal

6

action" under the TCPA and (2) Adrienne cannot show that she had a First Amendment right to make false statements in a police report.

## A. Standard of review

We review de novo the denial of a TCPA motion to dismiss. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019). In deciding if dismissal of a "legal action" is warranted, we consider "the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE § 27.006(a). "The basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). We view the pleadings and evidence in the light most favorable to the nonmovant. *Schimmel v. McGregor*, 438 S.W.3d 847, 855–56 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). Whether an application to remove a guardian is a "legal action" under the TCPA is an issue of statutory interpretation that we also review de novo. *See S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018); *see also In re Guardianship of Fairley*, 604 S.W.3d 450, 458 (Tex. App.—San Antonio 2020, pet. granted).

## B. The TCPA

The Texas Legislature enacted the TCPA in 2011. *See* Act of June 17, 2011, 82nd Leg., R.S., ch. 341, § 3, 2011 Tex. Gen. Laws 961, 964. The TCPA was

designed to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002. It does so by allowing a defendant who claims that a plaintiff has "filed a meritless suit in response to the defendant's proper exercise of a constitutionally protected right to seek dismissal of the underlying action, attorneys' fees, and sanctions at an early stage in the litigation." *Dolcefino, LLC v. Cypress Creek EMS*, 540 S.W.3d 194, 198 (Tex. App.—Houston [1st Dist.] 2017, no pet.); (citing TEX. CIV. PRAC. & REM. CODE § 27.003(a)).

The TCPA movant had to establish by a preponderance of evidence that the "legal action" it sought to dismiss were based on, related to, or in response to their exercise of the right of free speech, right to petition, or right of association. TEX. CIV. PRAC. & REM. CODE § 27.003(a). If the TCPA movant met this burden of showing that the TCPA applied, then the burden shifted to the nonmovant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). If the nonmovant made such a showing, then the court had to deny the TCPA motion. *Id.*

Since the passage of the TCPA, defendants quickly applied the early dismissal mechanism to dispose of claims in various types of cases. *See, e.g., Comm'n for*

*Lawyer Discipline v. Rosales*, 577 S.W.3d 305, 309–10 (Tex. App.—Austin 2019, pet. denied) (party moved for TCPA dismissal of disciplinary proceeding based on his exercise of the right to free speech in website demand letters); *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 193 (Tex. App.—Austin 2017, pet. dism'd) (TCPA case involving allegations of misappropriation or misuse of a business's trade secrets or confidential information); *Smith v. Malone*, No. 05-18-00216-CV, 2018 WL 6187639, at *2 (Tex. App.—Dallas Nov. 27, 2018, pet. denied) (mem. op.) (mother argued that TCPA applied because the father filed his custody suit in response to mother's communications to petition the government for assistance to obtain child support).

The broad language in the TCPA created two unintended consequences. First, TCPA cases overwhelmed the courts. *See Serafine v. Blunt*, 466 S.W.3d 352, 393–94 (Tex. App.—Austin 2015, no pet.) (Pemberton, J., concurring) (identifying many statutory-construction issues with application of broad TCPA statute and onslaught of TCPA appeals crowding appellate court's docket). Second, the TCPA "essentially close[d] the courthouse doors to Texas litigants with righteous claims" because the broad definitions of "rights of free speech and association" and "legal action" were applied in "unanticipated cases." Amy Bresnen, Lisa Kaufman & Steve Bresnen, *Targeting the Texas Citizen Participation Act: The 2019 Texas Legislature's Amendments to a Most Consequential Law*, 52 ST. MARY'S L.J. 53, 61 (2020). This

wide-ranging application of the TCPA led to courts urging the Legislature to amend the law. *See, e.g.*, *Universal Plant Servs., Inc. v. Dresser-Rand Group, Inc.*, 571 S.W.3d 346, 365 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (Keyes, J., concurring) (urging the TCPA "be brought back into compliance with the rules of statutory construction"); *Serafine*, 466 S.W.3d at 394–95 ("I would hope that the Texas Legislature might be listening, because it could provide, by amending the TCPA, the clearest and most direct expression of any legislative intent that has been eluding the Judicial Branch.").

The Legislature amended the TCPA in 2019 and narrowed the categories of connections a "legal action" could have to the exercise of a protected constitutional right to enable the movant to seek dismissal. Act of May 17, 2019, 86th Leg., R.S., ch. 378, 2019 Tex. Gen. Laws 684. Under the prior version of the TCPA, the movant had to establish that the "legal action" against it was "based on, relates to, or is in response to" the movant's exercise of one of three constitutionally protected rights. TEX. CIV. PRAC. & REM. CODE § 27.005(b) (prior version). "Relates to" was the most expansive category and brought tangential communications within the scope of the TCPA. *See Cavin v. Abbott*, 545 S.W.3d 47, 69 n.85 (Tex. App.—Austin 2017, no pet.) (interpreting "relates to" as merely denoting "some sort of connection, reference, or relationship"); *see also Robert B. James, DDS, Inc. v. Elkins*, 553

S.W.3d 596, 604 (Tex. App.—San Antonio 2018, pet. denied) (interpreting "relates to" as a broad qualifier).

The 2019 amendment deleted "relates to" from the TCPA, requiring TCPA movants who filed their legal action after September 2019 to establish that such legal action they seek to dismiss are "based on" or "in response to" their exercise of a protected right. TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), 27.005(b) (new version); *see* Laura Lee Prather & Robert T. Sherwin, *The Changing Landscape of the Texas Citizens Participation Act*, 52 TEX. TECH L. REV. 163, 169 (2020) (noting that deletion of "relates to" increases burden on movants seeking dismissal).

Because Ronald filed the removal application in July 2020, we apply the amended version of the TCPA to determine whether Adrienne established that Ronald's "legal action is based on or is in response to [Adrienne's] exercise of the right of free speech, right to petition, or right of association" TEX. CIV. PRAC. & REM. CODE § 27.003(a) (2019).

## C.   **"Legal Action"**

Ronald argues that the TCPA does not apply to his removal application because "individual filings within or related to a lawsuit (as opposed to underlying lawsuits and substantive claims that are the TCPA's core focus) are not within the [scope of the] TCPA." Ronald contends that the "removal of a guardian is a procedural remedy afforded in guardianship proceeding," and not a "legal action"

under the TCPA. Adrienne responds that the removal application is a "legal action" because an action to remove an individual as guardian adjudicates her legal rights as Erik's guardian. We agree.

The TCPA defines "[l]egal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief." TEX. CIV. PRAC. & REM. CODE § 27.001(6). The term excludes "a procedural action taken or motion made in an action that does not amend or add a claim for legal, equitable, or declaratory relief; alternative dispute resolution proceedings; or post-judgment enforcement actions. *Id*. § 27.001(6)(A)-(C).

Under section 1203.052 of the Estates Code, an interested person may file a complaint to remove a person as guardian after the party has been properly served with notice. *See* TEX. EST. CODE § 1203.052(a-1)(2). Ronald lodged his complaints about Adrienne in his removal application and sought removal of Adrienne as co-guardian of Erik under section 1203.052(a)(4) and (a)(6). An "application" is a formal written "request or petition" presented to a court. *Application*, BLACK'S LAW DICTIONARY (11th ed. 2019). Within that definition, the Texas Supreme Court observed that the term "petition" is used "in a generic sense to embrace all the pleadings of the plaintiff in the course of the case." *Montelongo v. Abrea*, 622 S.W.3d 290, 298 (Tex. 2021). Thus, an application requesting a party to be removed

12

as a guardian is a "remedy." *See generally Legler v. Legler*, 189 S.W.2d 505, 510 (Tex. Civ. App.—Austin 1945, writ ref'd w.o.m.) (noting removal of guardian as a "remedy" for violating certain statutory requirements). And "remedy" is another word for "relief." *See Remedy*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "remedy" as the "means of enforcing a right or preventing or redressing a wrong" and noting that "remedy" also means "legal or equitable relief").

Thus, the removal application is a "legal action" under the TCPA because it is a "petition" or "any other judicial pleading or filing that requests legal . . . relief." TEX. CIV. PRAC. & REM. CODE § 27.001(6). Moreover, Ronald's removal application seeks legal relief in the form of a statutory remedy under section 1230.052 of the Estates Code. *See id.* § 27.003(a); *State ex rel. Best v. Harper*, 562 S.W.3d 1, 9 (Tex. 2018) (a suit to remove certain county officers from public office is a "legal action" under the TCPA because "a removal petition seeks legal relief in the form of a statutory remedy"); *see also KB Home Lone Star Inc. v. Gordon*, No. 04-20-00345-CV, — S.W.3d —, 2021 WL 1760318, at *4 (Tex. App.—San Antonio May 5, 2021, no pet. h.) (motion for sanctions was a "legal action" under TCPA because it was a judicial filing that requested monetary relief); *cf. Fairley*, 604 S.W.3d at 459 (motion to transfer guardianship proceeding was a not "legal action" under TCPA because dispute did not adjudicate merits of underlying claims).

We next consider whether the removal action filed by Ronald "is based on or is in response to" Adrienne's exercise of her right to petition or right of free speech. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(a).

**D.     Right to petition**

Adrienne contends that the TCPA applies because Ronald filed the removal application in response to her statement to the police. Ronald argues that the TCPA does not apply because Adrienne had no protected constitutional right to file a false police report and accuse Stimpson's daughter of sexually assaulting Erik.

The right to petition includes "a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding" and "a communication in or pertaining to . . . an official proceeding, other than a judicial proceeding, to administer the law." TEX. CIV. PRAC. & REM. CODE § 27.001(4)(A)(ii), (B). A person exercises her right to petition when she "interacts with the police to report perceived wrongdoing." *Buckingham Senior Living Cmty., Inc. v. Washington*, 605 S.W.3d 800, 807 (Tex. App.—Houston [1st Dist.] 2020, no pet.). This determination does not hinge on whether the party's statements in the police report are true or false, as long as they pertain to at least one of the categories of communications under TCPA section 27.001(4). *Brann v. Guimaraes*, 01-19-00439-CV, 2021 WL 2690869, at *6 (Tex. App.—Houston [1st Dist.] July 1, 2021,

14

no pet. h.) (mem. op. on reh'g) (concluding that statements in a criminal complaint, regardless of their content, implicate a person's right to petition); *Ford v. Bland*, No. 14-15-00828-CV, 2016 WL 7323309, at *1 (Tex. App.—Houston [14th Dist.] Dec. 15, 2016, no pet.) (mem. op.) ("Statements to police regarding incidences of perceived wrongdoing are protected by the TCPA."); *Murphy USA, Inc. v. Rose*, No. 12-15-00197-CV, 2016 WL 5800263, at *3 (Tex. App.—Tyler Oct. 5, 2016, no pet.) (mem. op.) ("Filing a police report, whether true or false, implicates a person's right to petition the government, and this right must be considered when determining whether a person filed a false report.").

Here, neither Ronald nor Adrienne dispute that Adrienne contacted the League City Police Department and filed a police report alleging that Erik had been sexually assaulted. And the record shows that Ronald filed the removal application because Adrienne "filed a false report with the League City Police Department wherein she alleged that [Erik] was sexually assaulted by [Stimpson's] daughter." The record also shows that, at the hearing on the TCPA motion, Ronald's counsel conceded that filing a police report invokes Adrienne's right to petition under the TCPA. She specifically stated, "For purposes of this, Your Honor, I think—I think we agree that making a police report invokes the right to petition. I agree with that."

We therefore conclude that Ronald filed the removal application based on or in response to Adrienne's filing of the police report with the League City Police

Department. If the probate court's denial of Adrienne's motion to dismiss was based on a conclusion that the TCPA did not apply, the trial court erred. Accordingly, Adrienne made the initial showing required under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b)(1)(B). We need not address Adrienne's alternative argument that Ronald filed the removal application in response to her exercise her right of free speech. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 901–02 (Tex. 2017) (per curiam); *McDonald Oilfield Operations, LLC v. 3B Inspection, LLC*, 582 S.W.3d 732, 747 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (op. on reh'g).

### E.     Preservation of failure-to-rule complaints

In her second and third issues, Adrienne complains that the probate court erred by refusing to rule on Adrienne's motions to strike evidence and evidentiary objections. Ronald contends that Adrienne waived her evidentiary complaints by failing to obtain a ruling from the probate court.

To preserve error for appeal, the record must show that (1) a party complained to the trial court by way of a timely request, objection, or motion; and (2) the trial court ruled or refused to rule on the request, objection, or motion. TEX. R. APP. P. 33.1(a); *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 164 (Tex. 2018) (per curiam). If the trial court refused to rule on the request, objection, or motion, the record must show that the complaining party objected to the refusal. TEX. R. APP. P. 33.1(2)(B).

16

The record shows that Adrienne objected to Ronald's evidence in three different motions to strike. Her objections to Ronald's evidence were based on untimeliness, hearsay, conclusory statements, authentication, lack of foundation, unreliable, or irrelevant. The probate court had not ruled on Adrienne's motions or written objections before the October 2020 hearing. The record shows that Adrienne's counsel requested a ruling on her previous objections and motions. The probate court responded, "Okay. Anything else you'd like to add?" Adrienne's counsel responded, "No."

At the December 2020 hearing, Adrienne's counsel repeated her initial request to the court and asked for a written ruling on her pending objections and motions to strike. She then spent a great deal of time explaining each of her motions and objections. At the end of the hearing, the trial court responded to the parties' arguments:

> I feel like the discovery should be allowed. It was allowed back when we went through this and back in October. And so, it was extended; and we went through it. As far as that, that discovery is allowed.

Adrienne's counsel once again requested the probate court to issue a signed, written order on her objections, and the probate court responded, "Okay."

Based solely on the record before us, no evidence supports Adrienne's contention that the trial court refused to rule on her objections and motions to strike Ronald's evidence. Even if these two instances constitute the court's refusal to rule,

17

Adrienne had the obligation to object to the court's refusal. *See* TEX. R. APP. P. 33.1(a)(2)(B) (requiring a showing that "the complaining party objected to the refusal" to preserve error for appeal). She did not do so. Thus, Adrienne did not preserve her complaint that the trial court erred by failing to rule on her objections and motions to strike Ronald's evidence. *See Tyco Intern., Ltd*, No. 01-04-01109-CV, 2006 WL 3095326, at *4 (Tex. App.—Houston [1st Dist.] Oct. 31, 2006, no pet.) (mem. op.) (appellate complaint about trial court's failure to rule on evidentiary objections not preserved where record lacked any refusal to rule or any objection by nonmovants to court's refusal to rule).

We overrule Adrienne's second and third issues. We now consider whether Ronald has met his burden of establishing by clear and specific evidence a prima facie case to support removal of Adrienne as co-guardian for either gross misconduct or mismanagement in the performance of duties as guardian or abuse, neglect, or exploitation of Erik.

## F.   Prima facie case

In her final issue, Adrienne asserts that Ronald failed to establish a prima facie case on each theory of his removal claim, and therefore, the trial court erred in denying her TCPA motion to dismiss. Ronald argues that he presented clear and specific evidence of his grounds for removal for gross misconduct or mismanagement and engaging in abusive conduct.

18

To avoid dismissal under the TCPA, Ronald must establish by clear and specific evidence a prima facie case for each essential element of his claim. *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (citing TEX. CIV. PRAC. & REM. CODE § 27.005(c)). A "prima facie" showing generally "requires only the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding) (internal quotation marks and citation omitted). A minimum quantum of evidence must "be sufficient to allow a rational inference that some damages naturally flowed from the defendant's conduct." *See Elliott*, 564 S.W.3d at 847. Conclusory statements cannot establish a prima facie case under the TCPA. *See Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 355 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *see also Lipsky*, 460 S.W.3d at 592 ("Bare, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA.").

In viewing the pleadings and evidence in the light most favorable to Ronald, we conclude that he has established a prima facia case for removal of Erik's guardian based on his theory that Adrienne engaged in abusive conduct under section 1203.052(a)(6) of the Estates Code. *See Schimmel*, 438 S.W.3d at 855–56. The court may remove a guardian if she engages in conduct "that would be considered to be

abuse, neglect, or exploitation as those terms are defined by section 48.002, Human Resources Code." *See* TEX. EST. CODE § 1203.052(a)(6). Ronald argues that Adrienne's misconduct constitutes abuse. "Abuse" means "the negligent or willful infliction of injury, unreasonable confinement, intimidation, or cruel punishment with resulting physical or emotional harm or pain to [a] . . . person with a disability by the person's . . . family member." TEX. HUM. RES. CODE § 48.002(a)(2)(A).

Ronald theorizes that Adrienne filed a false police report in retaliation for his romantic relationship with Stimpson. He alleges that Adrienne demanded that Ronald comply with a "laundry list" of demands, including keeping Stimpson's daughters away from Erik. He also alleges that Adrienne acted out of desperation when she moved for the appointment of a guardian ad litem. When Baker issued his report and recommended that Ronald serve as Erik's sole guardian, Ronald speculates that Baker's recommendation spurred Adrienne to file a false police report to counter the recommendation. Ronald contends that the false police report and later investigations from the false police report constitute abuse.

Ronald relies on a case supplemental report by L. Strachan, a League City Police Department Investigator. The report shows that Strachan interviewed Ronald who told him that Adrienne and Ronald's once cordial co-parenting relationship changed for the worse when he began a serious relationship with Stimpson in 2017.

At that point, Adrienne imposed strict, unreasonable rules, such as making sure Ronald kept Stimpson's daughters away from Erik.

Strachan interviewed Alexandra, Ronald and Adrienne's daughter and Erik's older sister. Alexandra told Strachan that she observed Adrienne use the letterboard with Erik and felt that it was "forced" and that "Adrienne was moving the board" for Erik. She also stated that she disbelieved Adrienne when she told her that Erik used the letterboard to communicate. According to Alexandra's affidavit, she has never seen Erik communicate successfully with the letterboard. Instead, Erik merely "points to random letters that make no sense." Alexandra denied that Erik had the ability to communicate that he was sexually assaulted and that she believed Adrienne's allegations were false. Ronald cites the portion of Strachan's interview with Adrienne in which Strachan confirmed that Erik was "autistic" and "nonverbal." It was unbelievable to Ronald that Erik communicated to Adrienne that Stimpson's daughter "licked his wiener."

Strachan interviewed S. Mersing, an investigator for Adult Protective Services. Mersing told Strachan that Ronald's attorney contacted APS and explained that Stimpson's daughter was in "the Austin, Texas area" studying for her college exams when Adrienne alleged the sexual assault had occurred. The report also notes that Adrienne provided inconsistent dates as to when the sexual assault happened. In his affidavit, Ronald stated that he and Erik were separated throughout the sexual

assault investigation. Ronald was only allowed to have a supervised visit with Erik. When the supervised visit ended, Ronald noticed that Erik was "hysterical" and "crying." He stated that the "separation period was traumatic to Erik."

Finally, Ronald relies on the affidavit of P. Leuchtag, an APS regional attorney, to link Adrienne's conduct of filing an allegedly false police report to the harm to Erik that section 1203.052 (a)(6) requires. Ronald does not claim that Leuchtag is an expert but his burden of establishing clear and specific evidence of a prima facie case under the TCPA requires no expert testimony. *See, e.g.*, *Robins v. Clinkenbeard*, No. 01-19-00059-CV, 2020 WL 237943, at *10 (Tex. App.—Houston [1st Dist.] Jan. 16, 2020, no pet. h.) (mem. op.); *Moldovan v. Polito*, No. 05-15-01052-CV, 2016 WL 4131890, at *15 (Tex. App.—Dallas Aug. 2, 2016, no pet.) (mem. op.) (holding that because "clear and specific evidence" means "enough detail to show the factual basis for [plaintiff's] claim," lack of expert testimony on damages "is not fatal to [nonmovant]'s prima facie case") (quoting *Lipsky*, 460 S.W.3d at 590). Leuchtag opined, based on her experience and review of the circumstances here, that a parent reporting false allegations of sexual abuse is abusive to the child, expressed her concern for Erik's emotional well-being, and urged the court to investigate the matter further:

> I have had more than 22 years of experience representing Children's Protective Services in taking custody and often terminating the rights of parents of abused and neglected children. I have also been involved with many cases of reported sexual abuse of intellectually disabled

22

adults as an attorney for APS and I have personally seen the emotional damage that false reporting of abuse can have on children and adults. False reports of sexual abuse by a custodial parent constitute abuse. Given the paucity of any evidence that Erik Bibby was sexually abused by his father's girlfriend's daughter as well as the fact that Erik Bibby has extremely limited communication skills, I am concerned that the emotional damage Erik may have suffered from a potentially false report of sexual abuse merits further investigation by the Court.

Considering all the evidence, Ronald has established a prima facie case for Adrienne's removal as co-guardian based on her abusive conduct. *See* TEX. EST. CODE § 1203.052(a)(6). Erik was nonverbal and struggled to communicate, despite the help he received from his mother and other sources. Based on the entire record, the probate court could have reasonably determined that, even if Adrienne had to file a police report, she acted negligently in emotionally harming Erik by involving the police without first verifying the claims with Ronald to see whether Stimpson's daughter was home when Erik was allegedly assaulted. The court could have also reasonably determined that Adrienne acted willfully by falsely reporting sexual abuse after Baker recommended Ronald to serve as Erik's sole guardian after his investigation, causing emotional harm to Erik. The court was tasked with weighing the evidence and making credibility findings. *Eggert v. State Bar of Tex.*, 606 S.W.3d 61, 67 (Tex. App.—Houston [1st Dist.] 2020, no pet.) ("The trial court as trier of fact was the exclusive judge of the witnesses' credibility and the weight to be given their testimony."). Thus, the court could have reasonably credited

23

Leuchtag's testimony that false reports by a parent constitute abuse and that there was no support for Adrienne's sexual-assault claims. *See id.*

Given Adrienne's statements to the police coupled with the resulting investigation and disruption to Erik's daily routine due to the supervised visits and separation from Ronald, we hold that Ronald has met his TCPA burden. *Cf. In re Guardianship of Laroe*, No. 05-15-01006-CV, 2017 WL 511156, at *14 (Tex. App.—Dallas Feb. 8, 2017, pet. denied) (mem. op.) (without more, father's alleged statement threatening to send his daughter, the ward, to jail did not constitute abuse to justify removal of father as guardian under section 1203.052(a)(6)). Because Ronald has made a prima facie showing under section 1203.052(a)(6), we need not examine his alternate theory of recovery under section 1203.052(a)(4). *See* TEX. R. APP. P. 47.1.

## Conclusion

We deny Ronald Bibby's motion to dismiss the appeal and we affirm the trial court's order.

Sarah Beth Landau
Justice

Panel consists of Chief Justice Radack and Justices Landau and Countiss.