**FILED**

September 25, 2025

Fifteenth Court of Appeals
Christopher A. Prine
Clerk of Court

ACCEPTED
15-25-00144-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
9/22/2025 1:34 AM
CHRISTOPHER A. PRINE
CLERK

RECEIVED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
9/22/2025 1:34:58 AM
CHRISTOPHER A. PRINE
Clerk

No. 15-25-00144-CV

IN THE

15th  COURT OF APPEALS

at Austin, Texas

_____

Rich Robins,
Appellant,
v.
State Bar of Texas, et al
Appellees.

_____

Appealed from the 189th District Court of
Harris County, Texas as directed by Judge Tamika Craft

_____

APPELLANT'S AMENDED RESPONSE RESPECTFULLY
OPPOSING THE COURT'S EJECTION NOTICE
REGARDING THIS CASE

_____

Rich Robins
2450 Louisiana St. #400-155
Houston, TX 77006-2380
Rich@RichRobins.com
Tel. 713-574-6279

PRO SE APPELLANT

_____

APPELLANT'S AMENDED RESPONSE RESPECTFULLY
OPPOSING THE COURT'S EJECTION NOTICE
REGARDING THIS CASE

_____

**Sept. 22nd, 2025**

Pro se appellant Rich Robins hereby files this slightly amended opposition response to the court's pending ejection notice regarding his case.

## A. Introduction

1. The Appellees (Plaintiffs at the trial court level) are the State Bar of Texas & Commission for Lawyer Discipline (*hereinafter* the "State Bar"). Attorney Michael Graham is their appellate counsel.

2. The pro se Appellant (defendant at the trial court level) is Rich Robins (*hereinafter* "Appellant Robins").

3. Pro se appellant Robins hereby respectfully files this opposition to the Court's pending ejection of this case. As further background, Appellant Robins mentions the following...

## B. Facts

4. Appellant Robins includes **Exhibit 1**, below, as his most recent trial court petition filed pursuant to the Texas Deceptive Trade Practices Act against the State Bar of Texas, et al.

## C. Argument & Authorities

## Procedural background

5. Appellant Rich Robins desires to appeal to the **15th Court of Appeals** from a judgment signed by Judge Tamika Craft-Demming on June 16th, 2025 in the 189th District Court of Harris County. The case number is #2025-10213. The judgment very hastily dismissed Robins' Deceptive Trade Practices Act (DTPA) claims against the Appellees, based on mere TRCP 91a grounds. Appellant Robins subsequently timely filed a request, and later a revived request for Findings of Fact & Conclusions of Law on July 4th 2025 and August 1st, 2025, respectively. Tamika Craft filed no response whatsoever while the 1st Court of Appeals still refrains from ruling on a longstanding case there which challenges the legitimacy of her purported and very narrow electoral victory of 2022. *See Erin Lunceford v. Tamika Craft*, No. 01-23-00921-CV (Tex. App.—Houston [1st Dist.] Dec. 12th, 2023). More than one justice in that court is not only a member of the State Bar of Texas but also an officer in it. Appellant Robins has previously politely filed a motion to recuse Andrew Johnson in that court regarding Robins' underlying administrative dispute with the Texas Bar. Those folks expeditiously denied it, though, and without explanation. The 1st Court of Appeals similarly demanded that his administrative case transfer attempt to the 15th Court of Appeals (initially approved by the 15th Court of Appeals, too) be denied, as well... But for their interference, this appeal would have been concluded long ago and most likely favorably for Appellant Robins.

3

## Facts underlying the Appellees'
## ethics violation accusations against Appellant Robins

6.   In part, this case is about the ethics rules-related consequences inflicted by the Appellees upon Appellant Robins.   They primarily relate to his having not rushed to formally declare to a never-visited (by him), faraway court up in Tyler, Texas the (undocumented) reported death of a female client & eventual litigant (Cindy Crisp).  She was approximately 59 years old when Appellant Robins worked with her telephonically, without ever meeting her or receiving any compensation for himself, ever.  She needed to try to recover compensation for herself from an estate vendor in Tyler, Texas who had issued her two bounced checks that he had written as the total liquidation amount for her estate.  The estate vendor did so around the time when he also bounced dozens more checks to other people, while Tyler's police department expressly refused to get involved because the victims were not from Smith County.   Anyhow, the two checks to the client were for approximately $7,000.  Appellant Robins inserted in the lawsuit that the Appellant would settle for twice that amount (approximately $14,000) if no further legal wrangling would transpire. This would include court filing fees, loss-of-use remedies and interest for the clear breach of contract case.   The client did, after all, repeatedly say that her estate was worth several multiples of the final checks' amount and that she had been "ripped off".   Appellant Robins filed the lawsuit in Tyler, which he has only visited for a single day, ever.   That lone visit happened nearly a year after filing the abovementioned lawsuit and months after Robins had already taken the initiative to report the possibility of the (then still undocumented) death to the court.

7. No rule, not even TRCP 151 or TRCP 7, authorized Appellant Robins' disclosing to strangers that she was reportedly dead. Disclosing it subjected her and her family to identity theft risks, and even worse if she was actually still alive and consequently endured a forced hospitalized death for organ donation purposes. It happens. Meanwhile, no obituary was ever published for her, either. Compounding matters, Appellant Robins was officially and repeatedly denied a death certificate by state authorities when he repeatedly attempted to quietly obtain one. At any rate, her status as living or dead did not matter for her relevant legal rights to recover on a small ($7,000) claim that Appellant Robins pursued for her. Appellant Robins knows of no outstanding creditors for her to this day, as the total amount of the checks was smaller than Medicaid's statutorily stated minimum amount ($10,000) required for it to file collections actions. Furthermore, even to this day there is still no way to exclude the possibility that the client is confidentially cryopreserved, either. Cryonics service providers have learned repeatedly that heirs who find out about monetary deposits financing a relative's cryopreservation would prefer to "pull the plug" on the cryopreserved body's deep freeze container and take the money for themselves.

8. Appellant Robins' religion aligns with that of the Church of Perpetual Life, a science-based alliance in which death is considered optional thanks to cryonics and other evolving technologies. Everyone reading this is welcome to visit www.Perpetual.life. They are nice, informative and seemingly very sane folks who (unlike too many people at the State Bar of Texas) are not out to predatorily seek profit at society's expense. Cryonics or other life extension approaches plus time travel

5

could someday enable us all to visit with our deceased loved ones. The Bar appellees in this appeal mocked and scorned Appellant Robins' cryonics-related precautions, in writing, as he can easily prove. Their deities have dollar signs, after all.

9. Because of Appellant Robins' taking months to investigate before voluntarily mentioning the client's supposed passing to the court months before his lone visit there days after a devastating Houston hurricane (Harvey), the Commission for Lawyer Discipline accused him of misrepresenting. Their persecution resembled its more recent grievance prosecution of attorneys **Brent Webster**, **Ken Paxton** & **Sidney Powell** (etc.). The Texas Bar appellees inflicted on Appellant Robins the only ethics or criminal prosecution that he has ever endured for anything at all during his nearly 30 year legal career. So here we are. The corresponding DTPA lawsuit (**Exhibit 1**), below, provides additional details. Meanwhile:

**The Fifteenth Court of Appeals' involvement is needed to help make the State Bar of Texas' ethics rule interpretations uniform statewide**.

10. By litigating this dispute in the 15th Court of Appeals, we can jointly make it clear at the *statewide* level what the Bar appellees' ethics rules actually *permissibly* mean. Regarding the Bar appellees' (to quote the Supreme Court of Texas in its fairly recent decision favoring Brent Webster) "boundless" rule prohibiting attorney misrepresentations, for example, we can finally get statewide clarity regarding at what point one may even disclose a client's rumored but nevertheless undocumented death despite intimidatingly strict ethics rules protecting client confidentiality. Afterwards, perhaps Texas could subsequently begin to catch up with other

U.S. states where cryonics centers exist and (in some locales) thrive while Texas has endured the (literally) chilling weight of this ethics dispute as it continues to lack such an active center. The list of U.S. states where active cryonics facilities serving humans actually exist presently includes Michigan, Arizona, California, Oregon and Florida, but *not* Texas. Nevertheless, the prospect of making death optional has its appeal (now literally). The Fifteenth Court of Appeals, with its statewide electorate and focus on state agencies, governmental actions & inactions can help Texas catch-up especially here in Space City (i.e. Houston). Cryonics breakthroughs are needed to help make long distance space travel more viable, after all. Ask Elon… Or see the movies Passengers, Planet of the Apes (1968) and Avatar.

11. The Texas Bar maliciously uses its unconstitutionally maintained influences to entice judges and even some justices to exclude highly relevant evidence and rule-exceptions at trial, while cherry picking incomplete evidentiary tidbits to suit its self-serving narrative. The end result does not protect the public but rather the bar bureaucrats' gravy train. Texas needs for a court of the 15th Court of Appeals' comparatively high caliber to enter the scene for society's benefit, please.

12. Appellant Robins appeals the judgment in this DTPA case to the new Fifteenth Court of Appeals in Austin, Texas. That court has exclusive intermediate appellate jurisdiction over matters arising out of or related to civil appeals brought by or against the state.

13. The 15th Court has exclusive intermediate appellate jurisdiction over certain enumerated matters. Tex. Gov't Code §22.220(d); §25A.007.

Meanwhile the Texas Legislature restricted the 15th Court's jurisdiction by divesting it of jurisdiction over *criminal* matters. *In re Dallas Cnty.*, 2024 WL 3908122, at *15. Nowhere do the relevant provisions of the Texas Government Code prohibit jurisdiction regarding the State Bar of Texas or its statewide Commission for Lawyer Discipline, however. *See generally*, Tex. Gov't Code §22.220.

14. Puzzlingly enough, earlier this year the 15th Court of Appeals denied jurisdiction to unrelated litigation against the Commission for Lawyer Discipline. See *Turnbull v. Commission*, 15-24-00095-CV (15th COA, 2024). The legal climate has since evolved, though, in part due to new jurisprudence from the Supreme Court of Texas (cited below). It is time to let this jurisdictional debate regarding the State Bar of Texas either settle favorably for appellants asserting their rights to the 15th Court of Appeals' exclusive jurisdiction, or otherwise go directly to the Supreme Court of Texas. Texans want and need governmental rules (such as attorney ethics ones) to be interpreted similarly throughout the entire state.

15. Texas' Governor Abbott, Senator Joan Huffman and other proponents of the 15th Court of Appeals' creation envisioned a Texas where government regulations mean the same in all 14 different state appellate districts. This goal is particularly important in the legal profession, where presently some ethics rules are interpreted substantially differently, depending upon the appellate district. Sometimes a lawyer's services cover more than one lone appellate jurisdiction, as is the case with Robins' underlying dispute with the State Bar of Texas. One cannot obey conflicting interpretations of the same rule without running into even more ethics problems with the profiteering Bar appellees. The resulting

unpredictability makes it more costly to retain legal representation in Texas. That helps almost nobody.

**Relevant statutory authority requires that disputes against the State Bar of Texas (and its progeny) go to the 15th Court of Appeals**

16. Texas' Legislature limited the 15th Court of Appeals' jurisdiction to specific civil matters, including:

> [M]atters brought by or against the state or a board, commission, department, office, or other agency in the executive branch of the state government…or by or against an officer or employee of the state or a board, commission, department, office, or other agency in the executive branch of the state government arising out of that officer's or employee's official conduct….

TEX. GOV'T CODE § 22.220(d)(1). Such appellate matters may be heard only by the 15th Court of Appeals, instead of any other intermediate appellate court. *Id.*

17. The Legislature's use of a disjunctive "or" in the abovementioned text is significant. In viewing that text with some emphases inserted, it appears as:

> [M]atters brought **by or against the state or** a board, commission, department, office, or other agency in the executive branch of the state government…or **by or against an officer or**

9

> ***employee of the state* <u>or</u>** a board, commission, department, office, or other agency in the executive branch of the state government arising out of that officer's or employee's official conduct....

TEX. GOV'T CODE § 22.220(d)(1) (emphasis added). The "or" disjunctions are important.

18. "Or" as underlined in the abovementioned text disjunctively indicates an alternative. The two "or" conjunctions, therefore, indicate that the Texas Legislature intended to divide qualifying civil matters into four categories: (i) by or against the state; (ii) by or against a board, commission, department, office, or other agency in the executive branch of this state; (iii) by or against an officer or employee of the state; and (iv) by or against an officer or employee of a board, commission, department, office, or other agency in the executive branch of this state. *See* TEX. GOV'T CODE § 22.220(d)(1). Stated differently, as long as the underlying civil case falls into one of the abovementioned four categories, the case is within the 15th Court of Appeals' jurisdiction.

19. An appeal against the State Bar of Texas falls into, at the very least, category (i) mentioned above ("by or against the state"). The

10

State Bar and its progeny purport to be, or purport to be part of a legislatively created public corporation and administrative agency of the State. *See*, TEX. GOV'T CODE § 81.011(a). Claims against the State Bar appellees fall into the 15th Court of Appeals' jurisdiction under category (i) described above: claims brought by or against the State. TEX. GOV'T CODE § 22.220(d)(1).

### The doctrine of last antecedent, as depicted in Texas Supreme Court jurisprudence:

20. The Fifteenth Court of Appeals has seemingly *preliminarily* interpreted jurisprudence from the Supreme Court of Texas to mean that the words "executive branch" in the 15th Court of Appeals' statutory enabling authorization require that a "commission" must be part of the *executive* branch in order to qualify for jurisdiction in the Fifteenth Court of Appeals. In addressing that interpretation, however, it helps to notice that the words "executive branch" do not modify the words "matters against the state." The Supreme Court of Texas has embraced the "doctrine of last antecedent" before, including in *Spradlin v. Jim Walter Homes, Inc.*, **34 SW 3d 578 (2000)**. In applying that doctrine to this appeal, the modifier "executive branch" applies merely to the word before it, and not to the entire batch that precedes it including "matters against the state."

21. As an illustrative additional example offered for analytical purposes, the grammar of the relevant enabling statutory provision for the Fifteenth Court of Appeals resembles that of the following: "I will only eat

11

apples or bananas grown in my garden." There the phrase "grown in my garden" is understood to modify only "bananas," not "apples," according to the doctrine of last antecedent. A more elaborate example is: "[i]nsecticide brand X has not been formally tested on strawberries, grapes, apples, peaches, citrus fruits or other tree-born fruits (persimmons, cherries, etc.), but it has on tomatoes." Not all of the entities preceding "or other tree-born fruits" are tree-born fruits, but they are nevertheless suitably present in that sentence. The same can be said for "executive branch" in the statutory authorization of the Fifteenth Court of Appeals. A matter against the state qualifies for the Fifteenth Court of Appeals even if it is not one in the executive branch.

22. Those who feel intimidated with a perception that the presence of the words "executive branch" in the jurisdictional sentence beginning with "matters against the state" yields ambiguity can find solace in the following news. The Supreme Court of Texas has recently stated in *Kelley v. Homminga* that if constitutional or statutory "language is susceptible of two constructions, one of which will carry out and the other defeat its manifest object, courts should apply the former construction." *Dallas County*, 697 S.W.3d at 159 (cleaned up) (quoting SCALIA & GARNER, *supra*, at 63). *Kelley v. Homminga*, 706 S.W. 39 829, 832 (Tex 2025).

23. What is the statutory language's "manifest object" then? In looking back to Senate Bill 1045 from the 88th regular legislative session of Texas, the Senate Research Center's bill analysis expressly states the following:

Under the current judicial system, appeals in cases of statewide significance are decided by one of Texas's 14 intermediate appellate courts. These courts have varying levels of experience with the complex legal issues involved in cases of statewide significance, resulting in inconsistent results for litigants.

S.B. 1045 addresses these problems by establishing an intermediate court of appeals with exclusive jurisdiction over cases to which the state, a state agency, or a state official is a party. The justices on this new Fifteenth Court of Appeals are elected statewide, ensuring that all Texans have a voice in the selection of judges who decide cases of statewide importance. *See* Texas Senate Research Center, Bill Analysis for S.B. 1045, 88th Leg., R.S., (2023). *See generally* https://capitol.texas.gov/BillLookup/Text.aspx?LegSess=88R&Bill=SB1045 at the Enrolled: Analysis section.

Is it not remarkable that the legislative intent behind the bill is to grant exclusive jurisdiction to the 15th Court of Appeals for cases to which "a state agency" is a party?   Nowhere in that entire bill analysis does the Senate Research Center even so much as hint at an exclusion or exemption for the state agency known as the State Bar of Texas.   Why should it?

24. The State Bar of Texas readily refers to itself as a state agency, too, while clinging to sovereign immunity to the detriment of arguably nearly all Texans.  Indeed, through a combination of a sovereign immunity claim and an astonishing disbarment pursuit against Appellant Robins, the State Bar of Texas eventually got Appellant Robins' federal class action lawsuit against that bar dismissed.  In the process, this rendered fellow compulsory bar members without compensatory remedies even after the victorious *McDonald v. Longley* outcome from the 5th Circuit established that that bar had been noncompliant and unconstitutional.  *See*:  *McDonald v. Longley,* 4 F 4th 229 (5th Cir. 2021). *See generally* https://www.reuters.com/legal/legalindustry/state-bar-texas-

13

faces-fresh-challenge-mandatory-dues-2021-08-31/ .   The Texas Bar may not have its cake and eat it too, though...

25.  The State Bar of Texas is "a public corporation and an administrative agency of the judicial department of [the Texas] government," Tex. Gov't Code Ann. § 81.011(a).   Meanwhile, in defining state agencies, various provisions of Texas' Government Code say the following either directly or by reference:

Sec. 2052.101.  DEFINITION.  In this subchapter, "state agency" means:

(1)  a department, commission, board, office, or other agency that is in the executive or legislative branch of state government and that was created by the constitution or a statute, including an institution of higher education as defined by Section 61.003, Education Code;  or

(2)  the supreme court, the court of criminal appeals, a court of appeals, or the Texas Judicial Council or another agency in the judicial branch of state government.  *See*  Texas Government Code, §2052.101

26. Elsewhere in Texas' Government Code it similarly says:

Sec. 651.007. EXIT INTERVIEWS. (a) In this section, "state agency" means a board, commission, council, committee, department, office, agency, or other governmental entity in the executive, legislative, or judicial branch of state government. The term does not include an institution of higher education as defined by Section 61.003, Education Code.  *See*  Texas Government Code,  §651.007

27. In *Baumgardner v. Brazos River Authority*, the Supreme Court recently expressly referred to "jurisdiction-exercising state agencies." *Baumgardner v. Brazos River Authority*, 714 S.W.3d 597, 604 (2025) (emphasis added).  In other words, state agencies have jurisdiction in the

14

15th Court of Appeals.   Is there anyone reading this appellant's-opposition-to-transfer-letter who somehow doubts that that phrase means to the Supreme Court of Texas that if an entity is a state agency, the 15th Court of Appeals has jurisdiction over it?   Although the Court found that the Brazos River Authority is not a part of the executive branch, that does not mean that the Court is asserting that a matter against the state must directly involve the executive branch.

28. The 15th Court of Appeals has a uniquely statewide audience & electorate, and a specialized focus that can be particularly useful.   Local appellate courts do not have that, nor are they designed to. Furthermore, the State Bar of Texas is so under-regulated that a specialized court is even more necessary when trying to discover ways to bring it into constitutional (and other) compliance.    If anyone doubts this, they are encouraged to visit the website **TexasBarSunset.com**.    *See also*:  *McDonald v. Longley,* 4 F 4th 229 (5th Cir. 2021) & *Boudreaux v. La. State Bar Ass'n*, 86 F.4th 620 (5th Cir. 2023).

29. Indeed, the 5th Circuit Court of Federal Appeals has has adjudicated substantially against activities previously zealously embraced by the State Bar of Texas.   Meanwhile, the State Bar of Texas "forgot" to even mention its rampant embezzlement problem during the most recent Sunset Review (2016-17), as we document here: http://www.TexasBarSunset.com/embezzling .   Fortunately we were there to help remind them.   In fact, Appellant Robins was the only one to even mention the rampant bar administrator / deputy supreme court clerk theft problem (which lasted nearly a decade) out of all of the Texas Bar Sunset-related public comments filed by anyone, including Nathan Hecht.  *See*

https://web.archive.org/web/20210501083002/https://www.sunset.texas.gov/reviews-and-reports/agencies/comments/1331.   The State Bar of Texas gave awards to legal counsel who represented 9/11/01 terrorists, but only gave lawfare to Appellant Robins for having protected the public from that bar's subsequent & cloaked attempts to get unlimited dues-increase authority pursuant to the Sunset Review process, without even notifying (much less seeking referendum approval from) still compulsory bar members.   Incidentally, Appellant Robins was the *only* attorney  to testify critically of the Texas Bar during all three available spoken public comments opportunities involving that 2016-2017 Sunset Review of the Texas Bar at Texas' state legislature in Austin, too.   The only Bar Sunst Review (2016-2017) testimony made before the actual Sunset Commission in Austin had only one testifier even mention embezzler Kathy Holder, as that testifier (Appellant Robins) can prove with official video footage.

30. Incidentally, bar lawfare has become increasingly interesting to entities ranging from the Federalist Society:

https://fedsoc.org/events/ethics-or-ideology-bar-associations-and-the-boundaries-of-professional-discipline

to the White House:  http://www.EastmanDilemma.com .

31. Appellant Robins understands that the 15th Court of Appeals might perhaps be apprehensive that the enabling statutory and rule-based language for the 15th Court of Appeals do not expressly mention disputes with the government in the *judicial* branch.   He therefore reiterates that the enabling language also does not expressly and clearly *exclude* judiciary disputes from the jurisdiction of the 15th Court of Appeals, even

as it does exclude other sorts of disputes involving the government, especially in criminal law. So why exclude Appellant Robins' appeal? The 15th Court of Appeals exists for matters against the state, after all. Meanwhile, constitutions are made to be respected.

32. As you know, courts presume that the legislature purposefully chose which words to include in the statute and which to omit. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). The Court's objective in construing a statute is to give effect to the Legislature's intent, which requires one to look initially to the statute's plain language. *Leland v. Brandal,* 257 S.W.3d 204, 206 (Tex.2008). If that language is unambiguous, one is to interpret the statute according to its plain meaning. *Id.* The statutory language involving the 15th Court of Appeals is clear enough.

33. Furthermore, the Supreme Court of Texas has stated that when construing a statute, we give effect to all its words and, if possible, do not treat any statutory language as mere surplusage. *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs*., 19 S.W.3d 393, 402 (Tex.2000). The relevant statutory language analyzed above is a major reason why the 15th Court of Appeals has jurisdiction over disputes with the State Bar of Texas.

### 2 prior misdirections:

34. While it is true that the Supreme Court of Texas initially denied Appellant Robins motion to transfer his administrative case vs. the State Bar of Texas over to the 15th Court of Appeals last year, they have yet to rule on his request for a rehearing which he e-mailed them within a day, or so, of randomly discovering the basically unannounced recent denial, back

17

during the Christmas holiday of 2024. The 1st Court of Appeals had demanded that Robins' administrative case transfer attempt to the 15th Court of Appeals (initially approved by the 15th Court of Appeals, too) be denied. The Supreme Court subsequently gave no explanation for its initial denial, but the matter's having had the 1st Court of Appeals' thumb on the scales may be the reason. At any rate, Robins' pending administrative case slightly predated the creation of the 15th Court of Appeals, to which Appellant Robins zealously sought a transfer on the court's opening morning. That might be why the initial denial by the Supreme Court of Texas happened, as well. At any rate, that matter is distinguishable from the present one which pertains to the hasty, completely unexplained dismissal of Appellant Robins' lawsuit pursuant to the Texas Deceptive Trade Practices Act. Appellant Robins had to file that lawsuit to avoid possible statute of limitations grounds for that claim while the administrative appeal remains logistically derailed by the 1st Court of Appeals.

35. Meanwhile, Appellant Robins mentions his subsequent attempt to transfer his Religious Freedom Restoration Act (RFRA) case from the 14th Court of Appeals (where it was never even intended to go before a court clerk here in Harris County nevertheless mysteriously mis-directed it) to the 15th Court of Appeals. District Court judge Tamika Craft summarily dismissed that case, too, again with no explanation and while the 1st Court of Appeals continues to bestow upon her a victory through increasingly inevitable mootness at the expense of Harris County voters who want answers. Judge Erin Lunceford still patiently awaits her ruling. *See Erin Lunceford v. Tamika Craft*, No. 01-23-00921-CV (Tex. App.—

Houston [1st Dist.] Dec. 12th, 2023). Meanwhile Robins' letter request for a reconsideration in the 14th Court of Appeals remains pending, as one does in the Supreme Court of Texas, too. At any rate, Robins' RFRA case is distinguishable from the Deceptive Trade Practices Act (DTPA) endeavor presently under review by the 15th Court of Appeals. Appellant Robins has been doing his best to adapt to peculiar circumstances outside of his control. He needs the 15th Court of Appeals to respect the legislature's jurisdictional framework that Appellant Robins believes mandates that it *not* eject this appeal to Harris County where Tamika Craft mysteriously gets her way without appellate court action.

## Constitutional authorities

36. Furthermore, the Texas Constitution's open courts provision (Article 1, Section 13) states that all courts must be open and that everyone has the right to a remedy through the due course of law. Interpretations of it vary, admittedly, but Appellant Robins' position is that he has the right to litigate this appeal in the 15th Court of Appeals. Preventing his access to the 15th Court of Appeals requires a clear and strong statutory prohibition against it. Such a prohibition does not exist. To the contrary, statutory authority requires access for Robins' matter against the State Bar of Texas. Applying an imaginary prohibition by making the words "matters against the state" be applicable only to the executive branch would arguably be unconstitutional, as well as in apparently clear violation of the relevant legislative text and certainly the legislature's policy analysis, as detailed above.

19

37.   Meanwhile, the Interstate Commerce clause of the U.S. Constitution (Article I, Section 8, Clause 3) protects the rights of litigants not to be, among other things, arbitrarily excluded from protections such as those provided by the 15th Court of Appeals.   Appellant Robins has interstate involvement that arguably qualifies him for such protections.  He took the State Bar of Texas at its word that it would adjudicate not predatorily, but rather helpfully, so that attorneys could feel comfortable assisting an increasing amount of clients here in Texas.   He has found this not to be the case, and he wants to use a uniquely statewide and specialized court for adjudicating the disbarment that the State Bar of Texas demanded against him which was preceded by nearly 3 decades of his otherwise entirely ethically spotless (and still criminally spotless) record.

### D. Conclusion

38.   Pro se appellant Rich Robins  hereby thanks the 15th Court of Appeals for considering this letter of opposition and asks that the Court retain his appeal.   In the alternative, he asks that it do what is needed so that this matter be conveyed to the Supreme Court of Texas before being (Robins believes) unlawfully ejected back to a regional appellate court.  They apparently need the time to focus on finally ruling in *Erin Lunceford v. Tamika Craft*, No. 01-23-00921-CV (Tex. App.—Houston [1st Dist.] Dec. 12th, 2023).   An explanation for its hasty denial earlier this year of Appellant Robins' abovementioned (and polite) recusal motion (his only one filed anywhere, ever, in fact) of Bar officer and appellate justice Andrew Johnson would be informative, too.   The lack of answers helps further show why Appellant Robins' disputes warrant the statewide electorate and support base that uniquely bless and grace the new 15th Court of Appeals and its fine

20

justices.

**Sincerely submitted**,

Rich Robins
(Pro se Appellant)

2450L ouisiana St. #400-155
Houston, TX 77006-2380
Rich@RichRobins.com
Tel. 832-350-1030

_____

**Exhibit 1: Robins' DTPA lawsuit**:

CAUSE #202510213

| | | |
|---|---|---|
| RICH ROBINS | § | IN THE      JUDICIAL |
| | § | DISTRICT COURT |
| | § | |
| vs. | § | OF |
| | § | |
| | § | |
| COMMISSION FOR LAWYER DISCIPLINE | § | HARRIS COUNTY, |
| dba "TEXAS BAR" | § | TEXAS |
| aka "STATE BAR OF TEXAS" | § | |
| | § | |

## PLAINTIFF RICH ROBINS' 1st AMENDED DPTA PETITION

COMES NOW, Plaintiff Rich Robins (*hereinafter* "Plaintiff Robins").

## PARTIES

1. Plaintiff Rich Robins is the respondent named as the defendant in the Commission for Lawyer Discipline's lawsuit in case #2018-46488 in Harris County District Court #61. He is also the plaintiff in case #2024-18660, which has been handled by three different judges thus far, due to noble, unsolicited judicial recusals. That petition was abruptly & involuntarily terminated when its primary focus was the Texas Religious Freedom Restoration Act (TRFRA) violations by the Defendants. Plaintiff Robins adaptively added a DTPA-based claim to that petition but the case was concluded anyway. Along the way, Plaintiff Robins adaptively filed this separate petition pursuant to the Texas Deceptive Trade Practices Act (DTPA). Tex. Bus. & Com. Code § 17.00. Although it has much in common, factually and at times legally with the TRFRA petition, this 1st amended DTPA petition does not have actual TRFRA-based claims (nor

22

did its prior version, which Plaintiff Robins filed while the TRFRA petition was still at the trial court level and before he filed his subsequent notice of appeal for it). Meanwhile, Plaintiff Robins hereby asserts the following…

2. Plaintiff Robins brings this legal action against the State Bar of Texas (*hereinafter* the "Texas Bar"), and its Commission for Lawyer Discipline (*hereinafter* the "CFLD"). It is <u>not</u> presently brought against the the Chief Disciplinary Counsel (*hereinafter* the "CDC"). The actually named Bar defendant parties are referred to in several instances as the "Bar defendants".

3. This is the *only* disciplinary action or prosecution EVER to be pursued against Plaintiff Robins by *any* bar association or other authority during his approximately 30 years of actively practicing law. Plaintiff Robins also has no criminal or even traffic convictions against him.

## BACKGROUND

4. On July 2nd, 2021 the Fifth Circuit Court of Appeals in New Orleans, Louisiana decisively ruled that the Defendants Texas Bar (& thereby its CFLD & CDC) impermissibly, unlawfully and enduringly spent attorney members' coercively extracted annual dues on ideological and political endeavors that are *not* germane to regulating or improving the practice of law here in Texas. *See McDonald v. Longley*, 4 F.4th 229 (5th Cir. 2021). The Court also found that the Defendants had similarly unlawfully not given dues-paying members constitutionally adequate and meaningful notice of how their coercively extracted dues money would be spent or where their fees would go. *Id*. Additionally, the Court found that the Defendants have not given members adequate veto authority over such

23

expenditures.  *Id*.

5. Subsequently the Fifth Circuit issued its relevant mandate on July 26, 2021 (ECF No. 103).  It thereby sided with the amicus brief-submitting Texas Attorney General Ken Paxton and against the Texas Bar.   Perhaps not altogether coincidentally, that bar has since sought to disbar Attorney General Paxton, in part for allegedly not investigating something adequately enough before making a statement about it in a court filing.   That bar tried to disbar Attorney Paxton in Collin County District Court's case # 471-02574-2022, which is available online at: https://apps2.collincountytx.gov/judicialrecords/case .

6. As Plaintiff Robins present petition will show, below, the same bar nevertheless prosecuted Plaintiff Robins for investigating something before nonmandatorily declaring it, namely word of his client's death. He heard from someone on the phone whom Plaintiff Robins had never met, and who had received a considerably valuable inheritance from her as a result of such a (potentially hasty) declaration.  In the process, that source (the client's son) deprived Medicaid of compensation and quite possibly Plaintiff Robins' client of her house while she remained alive, albeit institutionalized.   Plaintiff Robins investigated this before he ultimately disclosed word of a 59 year old client's death to a court up in Tyler, Texas.   He declared this even as no Texas state statute, state rule of civil procedure or binding state caselaw requires or allows for such a disclosure in the midst of potent client confidentiality restrictions (which survive the life of the client).   One statutory provision even encourages one to wait seven years before presuming the death of someone who is not documented as such.  Meanwhile, federal caselaw says no such advisory is even required by the rules.   Plaintiff Robins nevertheless

24

reported this to the court (up in Smith County, Texas) even though it is undisputed that there has never been an obituary published for the client and even though he had been repeatedly denied by state authorities a copy of her death certificate (if one even existed).

7. For decades, the Texas Bar has *already* had ample notice from the U.S. Supreme Court and the Texas Government Code that members are not to be coerced into funding expenditures that are not germane to the permissible purposes of a mandatory bar. *See Keller v. State Bar of California*, 496 U.S. 1 (1990). See also TEX. GOV'T CODE §81.034. The Texas Bar continues to operate an attorney disciplinary system that is not in compliance with constitutional law, as this dispute helps show.

8. All of the Texas Bar Defendants' approximately five claims prosecuted against Plaintiff Robins are based on the incorrect supposition that the Texas Bar can nondemocratically impose its will on the state of Texas regarding Texas' otherwise fairly tolerant and permissive rules and laws. The particularly relevant rules & laws involve the speed with which a lawyer representing a plaintiff here must report to the assigned court news of the plaintiff's death even when independent attempts to verify it did not document and possibly could not ever document it sufficiently reliably. The Bar defendants allege that a few months' delay under such circumstances is deceptive and grounds for disbarment, even as apparently no state rule, law or case decision labels such hesitation as impermissible, much less deceptive. In fact, Plaintiff Robins has found caselaw asserting contrarily that one need not even notify the court that a client has passed away in a pending case. The closest that any Texas Rule of Civil Procedure comes to the topic is permissible regarding how Plaintiff Robins handled matters, in

25

fact. (TRCP 151).

9. The relevant prosecution of Plaintiff Robins emerged about a year after he became the *only* attorney to testify critically of the Texas Bar during all three available public comments opportunities involving the 2016-2017 **Sunset Review of the Texas Bar** at Texas' state legislature in Austin. Plaintiff Robins compassionately recommended keeping the Texas Bar around for another 12 years (as he can easily prove). However, he opposed granting the Texas Bar the deceptively & sneakily pursued, unrestricted rights to increase annual dues whenever it likes and as often as it likes. The Texas Bar sought that right despite having simultaneously mass-mailed all (still compulsory) member attorneys that their referendum rights remained intact amidst the Sunset process. Referendum restrictions have existed regarding dues increases for many decades, if not for the entire time that the Texas Bar has existed with mandatory membership status. Rather than apologize for having defrauded the membership, the Texas Bar found fault with the attentive observer & candid caretaker Robins. The Bar defendants viciously attacked his livelihood at the expense of Plaintiff Robins' consumer rights including by canceling his bar license. Within a year of successfully getting Plaintiff Robins disbarred, the Texas Bar awarded itself a dues increase and without seeking, much less obtaining approval from the still compulsory Texas Bar membership.

## DISCOVERY CONTROL PLAN

10. Plaintiff Robins intends to conduct discovery against the Defendants under the potentially adaptively tailored Level 3 pursuant to Texas Rule of Civil Procedure 190.4, etcetera.

26

## PLAINTIFF ROBINS' AFFIRMATIVE CLAIMS FOR RELIGIOUS DISCRIMINATION ARE NOT PART OF THIS PENDING PETITION

11. In an effort to avoid deleting facts that are relevant to both Plaintiff Robins' TDRFA *and* DTPA claims, Plaintiff Robins mentions that during January of 2023, the Texas Bar defendants, either directly or indirectly revealed their legally impermissible intentions in their first, ever, answer to the accused respondent Robins' request for disclosures provided to Plaintiff Robins in their ethics prosecution against him. In those disclosures, the CFLD's and Texas Bar's and arguably CDC's prosecutor John Brannon states:

"Factual Bases….

"[Plaintiff Robins] went on to claim that "any fan of baseball star Ted Williams realizes that a head can be rather affordably severed from a deceased body and frozen for a desired revival and bodily regeneration many years later …." Respondent asserts that "[s]uch procedures have been known to take place very secretively at the request of heirs who do not tell others in the family, and who cremate merely the body." **The aforementioned statements by Respondent evidence the types of salacious, false,dishonest, defamatory, frivolous, and outrageous claims and positions Respondent took during his representation of Crisp and the Clinkenbeards."**

12. Although this petition does not include a TRFRA claim (as clarified above), Plaintiff Robins mentions that he is being discriminated against for his religious views as a longstanding follower of the Church of Perpetual Life. That nondenominational church is available to the world at:

27

**ChurchOfPerpetualLife.org** .

13. That church stands for ideals such as how we are each blessed with one life that has infinite potential *through science*. We are joined together through an alliance of potential universal resuscitation. Furthermore, those who embrace pioneering technologies in furtherance of such goals are not to be scorned or harmed for it.

14. Plaintiff Robins always wanted what is best for his relevant and reportedly deceased client, Cindy Crisp. He avoided rushing to declare her dead while he hoped to somehow discover ways to locate and financially support her. He was polite to her family members and nonjudgmental, as psychotherapist Karl Rogers preached as part of his Humanist school of thought. Nevertheless, the Texas Bar defendants made it crystal-clear how hostile they are to such a supportive approach to life. They have gone to great lengths to penalize, silence and cancel Plaintiff Robins professionally for it, too, while they continue making a fortune from (still compulsory) bar members each year. The Texas Bar's annual budget is approximately $60 million but it would be multiples more (at all Texans' expense) if it had not been for Plaintiff Robins' timely written and testimonial efforts during the 2016-2017 Sunset Review process.

15. Plaintiff Robins shares the following benign & explanatory

quote: "[t]he aim of the cryogenic process is to preserve tissues, organs and the brain after the heart stops beating, with the body stored head-down in liquid nitrogen at -196C. They are then considered 'in suspension' ahead of possible scientific leaps to revive and return them to good health."

Source: https://metro.co.uk/2023/01/07/brits-hope-for-life-after-death-by-cryogenically-freezing-their-bodies-18039920

What is so unacceptable about supporting and assisting anyone's possible direct involvement with that pursuit?

16. Here is an example of what can happen to those (such as Robins' client Cindy Crisp, who never discharged him as a client…) who do not hide their cryopreservation aspirations from heirs: *Alcor Life Extension Foundation v. Pilgeram.*

That relatively recent dispute, now concluded, is included by hyper-link here:

https://www.dailymail.co.uk/news/article-7903137/Sons-legal-fight-dead-fathers-frozen-head-against-cryogenics-firm-preserving-it.html

Long story short, heirs have been known to try to disrupt a deanimated person's cryonics-related plans, in pursuit of the relevant money for themselves.

17. Anyway, the Defendants' treatment of Plaintiff Robins is in violation of the Texas Deceptive Trade Practices Act. They canceled his religious freedoms as included in his practice of law, without sufficient (if any) statutory, common law or civil procedure rule-based justification. If the Texas Bar is so eager to prevent the expression of members' concerns

about potentially "biologically paused" or "clinically dead but hopefully not permanently so" clientele, it should try to amend applicable statutory, civil procedure, and jurisprudential authorities to inform people as much. Instead, the Defendant Texas Bar, CFLD and CDC consider themselves to be above such "deathist" endeavors, quite possibly because they would not gain traction with Texans anyway. Texans want to live, not subscribe to the Texas Bar's dark view of life. Texans certainly do not want to empower unelected and insufficiently regulated Bar bureaucrats to determine when other people's rights should be terminated.

18. Plaintiff Robins' free exercise of religion was substantially and unlawfully burdened by the Bar defendants' actions. Actions from all three have not furthered a compelling government interest, as one can tell from the absence of statutory or civil procedure rule authority saying otherwise. Meanwhile, the Texas bar defendants' actions against Plaintiff Robins are not the least restrictive means of furthering any compelling interest. For example, the Texas Bar defendants have not enacted any rules that are expressly on point, nor have they successfully gotten (or even tried to get) a statutory or civil procedure restriction placed on conduct involving the (*supposedly* obligatory) hasty declaration of a client's death despite the risks of breach of attorney / client privilege (which indisputably outlives the client), and of identity theft that could financially adversely affect the whole family. The Bar defendants have also not prosecuted any other lawyer for doing something similar, as far as Plaintiff Robins can tell. Incidentally, most lawyers in the USA need not be a member of a state bar in order to maintain their law licenses. It will be interesting to see how much longer the status quo remains intact here in Texas, though.

30

19. Meanwhile, despite federal restrictions upon the Texas Bar's taking such political stances, the bar defendants excluded nearly all of Plaintiff Robins' defenses and evidence from the fact-finder jury's access during pre-trial proceedings, with the predictable result's emerging. With practically no defenses, the jury was eager to conclude a 3 day trial with at most a ten minute conference. None of the jury charges adequately resembled the rules allegedly violated, while every instruction that Plaintiff Robins submitted was similarly excluded from the jury's consideration. Needless to say, an appeal is underway. It is also an ongoing burden from which Plaintiff Robins is entitled to relief pursuant to the DTPA.

**Defendant Robins has endured and continues enduring unlawful treatment by the Bar defendants:**

20. The CFLD, Texas Bar and CDC have prosecuted and punished Defendant Robins to forfeit his religious views favoring the (hopefully merely) undead, while seeking to punish him for his having observed and practiced his beliefs in the past as part of his practice of law. Astonishingly enough, the CFLD petitioner would, even in the documented absence of statewide law's, rules' or jurisprudence' requiring it, have Defendant Robins rush to judgment when circumstances are ambiguous as to whether a missing client is potentially cryo-preserved, i.e. clinically dead (or even just missing perhaps at a Hospice facility) instead of permanently dead. The petitioner would have had Defendant Robins disclose such a client's possible vulnerable legal status even when that client's well-being remains insufficiently confirmed, and would consequently be compromised and a source of great suffering upon a desired revival someday. The petitioner would

31

have even had Defendant Robins settle a case such as Cindy Crisp's despite his firm belief that the (possibly cryo-preserved or simply comatose) client would disapprove upon awakening. As prominent caselaw says, "[w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. *Adkins v. Kaspar*, *393 F.3d 559*, 569 (*5th Cir. 2004*), citing *Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981).

21. Furthermore, the Code of Federal Relations states, in relevant part:

"In most cases whether or not a practice or belief is religious is not at issue. However, in those cases in which the issue does exist, the Commission will define religious practices to include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views. This standard was developed in *United States* v. *Seeger,* 380 U.S. 163 (1965) and *Welsh* v. *United States,* 398 U.S. 333 (1970)." *See* §1605.1 "Religious" nature of a practice or belief.

22. Nevertheless, Plaintiff Robins mentions how the Texas Bar / CFLD / CDC prosecutor John Brannon claimed in a (successful) opposition to a continuance that Defendant Robins did not refer to his religious views favoring the potentially cryo-preserved client Cindy Crisp during a 5+ hour deposition of Plaintiff Robins. Nevertheless, the following two exchanges between the CFLD petitioner ("Q") and Defendant Robins ("A") are revealing (as are others) as to how inaccurate such assertions by the Texas Bar defendants were:

Deposition, at page 47:

Q.   And so, I want to try to get philosophy, religion, any type of spirituality out of it. And just focus on that non-sector for a moment, for purposes of this case.
A.   Non-sector?
Q.   If you would, please. Something that is not spiritual or religious or philosophical. I want to get -- if you can remove that, you know, from your vocabulary during the question and answer. That would be very helpful. Okay?

&

Deposition page 134:

A. Yes.   But please, realize, there is a difference in my world, between being clinically dead and permanently so, biologically paused and exterminated.

Texas Bar prosecutor John Brannon is an agent (if not also an employee) of the CDC, as well as an employee of the CFLD and of the Texas Bar.  They work in cahoots with one another.

**Sovereign immunity is not applicable**:

23. Claims of sovereign immunity do not withstand scrutiny.  The following appellate court case from the Texas Bar headquarters' backyard of Austin, Texas shows how claims about sovereign immunity pursuant to its own rules are inadequate under the circumstances: *Commission for Lawyer Discipline v. Rosales*, *577 S.W.3d 305*, 313-314 (Tex. App.—Austin *2019*, pet. denied).   There it states the following:

The Commission further argues that the TCPA does not apply to its disciplinary proceedings because the Commission is entitled to "absolute

immunity." In support of this argument, it points to the provision providing that the TCPA "does not abrogate or lessen any other ... immunity available under other constitutional, statutory, case, or common law or rule provisions," Tex. Civ. Prac. & Rem. Code § 27.011(a), and to Rule 17.09 of the Texas Rules of Disciplinary Procedure, which provides:

All members of the Commission, the Chief Disciplinary Counsel (including Special Assistant Disciplinary Counsel appointed by the Commission and attorneys employed on a contract basis by the Chief Disciplinary Counsel), all members of Committees, all members of the Board of Disciplinary Appeals, all members of the District Disability Committees, all officers and Directors of the State Bar, and the staff members of the aforementioned entities are immune from suit for any conduct in the course of their official duties. The immunity is absolute and unqualified and extends to all actions at law or in equity.  Tex. Rules Disciplinary P. R. 17.09.

According to the Commission, "[a]n obvious purpose of the immunity provided by Rule 1[7].09 is to allow the disciplinary system to discharge their official duties without fear of being sued or liable for monetary judgments, such as attorneys' fees that can be awarded in [TCPA] proceedings."

The immunity granted in Rule 17.09, however, is official immunity that shields *governmental employees* from personal liability so that they are encouraged to vigorously perform their official duties. *See id*.; *Telthorster v. Tennell,* 92 S.W.3d 457, 460-61 (Tex. 2002) ("Official immunity is an affirmative defense that shields governmental employees from personal liability so that they are encouraged to vigorously perform their official duties.") (citing *Kassen v. Hatley,* 887 S.W.2d 4, 8 (Tex. 1994)). It is not the same as sovereign immunity, which protects the State, and government entities like the State Bar, from lawsuits for money damages unless the immunity has been waived. *See, e.g., Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 374 (Tex. 2006).

22.  Incidentally, even the abovementioned rule 17.09 does not purport to immunize the Commission for Lawyer Discipline or the Texas Bar.

24. Similarly, the Texas Religious Freedom Restoration Act (TRFRA) says, in relevant part:

> Sec. 110.008. SOVEREIGN IMMUNITY WAIVED. (a) Subject to Section 110.006 [notice & right to accommodate], sovereign immunity to suit and from liability is waived and abolished to the extent of liability created by Section 110.005 [remedies], and a claimant may sue a government agency for damages allowed by that section.

25. Additionally, cases such as **Richards v. Mena**, 907 S.W.2d 566, 569 (Tex.App.--Corpus Christi 1995, writ dism'd) are persuasively relevant. CPRC §106.002(b) "provides for an express waiver of the State's governmental immunity to those prohibited acts listed in [CPRC] §106.001."

26. Plaintiff Robins submits that sovereign immunity does *not* protect the Bar defendants from the reach of the DTPA, either. Plaintiff Robins is a "consumer" who naively spent several hundred dollars per year on the purported goods & services of the Bar defendants. These include licensing maintenance, continuing legal education (CLE), printed & online publications, ethics hotline advisories and live course offerings, etcetera. Plaintiff Robins detrimentally relied in various ways as a deceived consumer while the Bar defendants continued to pursue ever-increasing revenues for themselves, especially deceptively through the Sunset Commission's 2016-2017 review. The abovementioned materials and other so-called services were intentionally misleading and forcibly influential upon Plaintiff Robins due to the mandatory bar membership privileges that the Bar defendants still enjoy. The situation has been the kind that the DTPA is designed to address for society's benefit.

Meanwhile, the Bar defendants are "persons" pursuant to the DTPA. The definition of "person" in the Texas DTPA clearly includes organizations such as the Bar defendants. The Bar defendants comprise a group, however organized. Claims of quasi-governmental & public corporation status do not shield the Bar defendants from what they are: persons, pursuant to Texas' DTPA.

**Discovery has not begun in this case, and is substantially needed to further develop the assertions & claims**. Nevertheless, the following descriptions apply:

## AFFIRMATIVE CLAIMS PURSUANT TO THE TEXAS DECEPTIVE TRADE PRACTICES ACT

27. Plaintiff Robins incorporates the aforementioned as if set forth fully herein. He pursues claims against the Defendants pursuant to the Texas Deceptive Trade Practices Act (DTPA). The Defendants have engaged in false, misleading & deceptive practices at Plaintiff Robins' expense, and that of the general public which depends upon legal services that the Texas Bar has mismanaged and continues to subvert for its own profiteering, in numerous ways.

28. The DTPA mandates that the law "shall be liberally construed and applied to promote its underlying purposes, some of which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty. Others are to provide efficient and economical procedures to secure such protection." Tex. Bus. & Com. Code § 17.44(a) (emphasis added).

29. The DTPA declares unlawful any "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), which it defines as including, inter alia¸ "causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services," id. § 17.46(b)(2), "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not," id. § 17.46(b)(5), "advertising goods or services with intent not to sell them as advertised," id. § 17.46(b)(9), and "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed," id. § 17.46(b)(24).

30. Texas Bus. & Com. Code § 17.45(1) defines "goods" as "tangible chattels or real property purchased or leased for use." See also United Postage Corp. v. Kammeyer, 581 S.W.2d 716, 721 (Tex. Civ. App.—Dallas 1979) ("tangible chattels" are "those items of personal property which may be seen, weighed, measured, felt or touched."). Texas Bus. & Com. Code § 17.45(2) defines "services" as "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods." See also Riverside Nat'l Bank v. Lewis, 603 S.W.2d 169, 174 (Tex. 1980) ("services" means "action or use that furthers some end or purpose: conduct or performance that assists or benefits someone or something: deeds useful or instrumental toward some object.").

31. Texas Bus. & Com. Code § 17.45(6) defines "trade" and "commerce" as "the advertising, offering for sale, sale, lease, or distribution of any good or service, of any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value, wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this state."

32. The Texas Bar defendants made various misrepresentations & nondisclosures which ultimately profited them but substantially harmed Plaintiff Robins.   Texas Bus. & Com. Code § 17.46(b)(24) provides that the phrase "false, misleading, or deceptive acts or practices" includes "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."

**Trangressions & lawfare by the Bar defendants**…

33. The Texas Bar defendants have engaged in, and continue engaging in, various transgressions that constitute deceptive trade practices acts.   The following list is not all-inclusive, as discovery has not gotten underway in this dispute and we are in a notice pleadings state.   In the mean time, though, Plaintiff Robins reports that the Bar defendants have represented that they take precautions for the bar members' benefit which they do not. For example, they advertise and otherwise mention in bar materials that they provide settlement / mediation conferences, in part to clarify what (if any) property is to be handed over to the disgruntled client, whom the bar defendants profit from further irritating at the targeted attorney members' expense.  The Bar defendants did not make anything like that available for

38

Plaintiff Robins, though, despite requests by his substitute client (Cindy Crisp's son) *and* by Plaintiff Robins. The Texas Government Code purports to require such settlement-friendly pursuits, too, but the Texas Bar defendants denied this as the abovementioned grievance trial concluded. They opportunistically exploited their own deceptiveness to try to make it look like Plaintiff Robins had been noncompliant when in fact he had been compliant. This situation was misleading, to say the least. Plaintiff Robins adapted his actions in the litigation based upon the Bar defendants' false assurances. He also would have never helped the son of his initial (very polite) client Cindy Crisp, who was stricken with multiple sclerosis but who nevertheless found ways to let Plaintiff Robins know that her son willingly presents unacceptable hazards to others.

34. The bar defendants have also held themselves out as consistently making an effort to communicate what their interpretations of (conveniently vague) ethics rules actually require, when they do not. They make over $13 million annually peddling Continuing Legal Education (CLE), as well as articles, books and conference attendance "opportunities". They nevertheless do not warn compulsory members about all the rule interpretations which they will surprisingly impose upon the astonished compulsory bar member at trial. In the process, at trial they ignore authorities requiring that such rules be strictly construed in favor of the attorney. Such bait & switch tactics are unworthy of the licensing monopoly privileges which the Bar defendants profit from to the tune of tens of millions of dollars annually. The Bar defendants certainly do not make an effort to provide restitution to the duped consumers who are still forced to contribute to the defendants' annual $60 million dollar budget, either.

Although over 80% of the Texas Bar's active membership reliably abstains from voting in the annual, internet-enabled bar elections (usually featuring Bar sycophantic candidates of the Bar defendants' choosing), that percentage would be far higher if the Bar defendants were transparent & forthcoming all along about their deceptiveness, unreliability, eagerness to breach warranties and other agreements all along.   Such transgressions by the Bar defendants are not protected by sovereign immunity under other statutes and they certainly are not pursuant to the DTPA.   Transgressors include Bar prosecutors who violate the same ambiguous ethics rules that they hypocritically use to try to silence and cancel certain (still compulsory) members.   Such rules include the importance of avoiding driving up the cost of litigation, of avoiding frivolous legal actions, and avoiding being misrepresenting.   Plaintiff Robins has various examples of false assertions and other shameless, intentionally fatiguing, weaponized claims by various employees of the Bar defendants which repeatedly remind him how mistaken he was to recommend to the Sunset Commission that the Bar defendants' charter be renewed even as most lawyers in the USA need not be bar members to get to practice law.

35. The Bar defendants' ethics rules even have written assurances that members will not be prosecuted for good faith errors in judgment, only for the Bar defendants to bend over backwards to avoid letting something be called sufficiently reasonable to qualify.   Victims, such as Plaintiff Robins, realize after it is too late that relying upon such assurances by the Bar defendants was hazardous and even dangerous.

36. Additionally, the Bar defendants do not even attempt to comply sufficiently with religious freedom requirements imposed on them by

40

statute, including by the State Bar Act, i.e. Chapter 81 of the Texas Government Code).   Nevertheless, they do not readily (or otherwise) disclose to members ahead of time that they will not comply.   One learns it as a surprise from the Bar defendants at, or right before trial, and subsequently gets heavily penalized for the privilege.

37. Furthermore, they have purported (through implicit if not explicit warranties) to be in compliance with applicable laws when, as the 5th Circuit in the abovementioned *McDonald v. Longley* case demonstrated, they have been far from it.   As Plaintiff Robins' case demonstrates, they even *remain* noncompliant.   They generate billable hour documents of permissible fees for lawyers, only to attack and punish lawyers later who abided accordingly when it suits the Bar defendants.

38. Meanwhile they falsely represent in writing on their website (etcetera) that they cannot resolve a client's fee dispute with a member attorney, even as one later discovers that when it suits the Bar defendants, they are nevertheless willing to meddle, interfere and subvert a potential conciliation process instead of offering the legally required mediation of grievances.   They avoid such mediation even when both sides requested a peaceful, nonlitigious resolution as had been the case in Plaintiff Robins' only prosecution.   The Bar defendants even claim, Plaintiff Robins believes dishonestly, that there is no such conciliation obligation.

39. They also boast being a source of attorney self-rule, only for the opposite to emerge after years of membership persistence seeking reforms such as grievance reforms proposed by Larry McDougal before, during and after his state bar presidency.   Plaintiff Robins even has video footage of such Bar deceptiveness which had induced detrimental reliance among

people such as Plaintiff Robins, who thought that vagueness in the Bar ethics rules would finally be addressed instead of left as-is without even letting the Bar's board of directors vote on proposed modifications, much less the membership.

40. Additionally they assert that we should not try to co-opt a judge or justice before whom we have litigation or other business. The Bar defendants do not practice what they preach, though. They essentially induce members of the judiciary to be biased in favor of the Bar defendants, and against the legitimate interests of people such as Plaintiff Robins.

41. The Bar defendants even tried to hide from the Sunset Review Commission the half a million dollar embezzlement by their membership director just over a decade ago. This at least implicitly told us members that we must do the same to preserve attorney / client confidences adequately, especially when there is no written duty to rush to report a client's supposed but unproven death. Essentially, the Bar defendants emphasize the importance of preserving client confidentiality, except when they do not. It is misleading to say the least. Plaintiff Robins detrimentally relied on such confidentiality that he now realizes was simple parasitic & even predatory deceptiveness.

42. They also hold themselves out as being fair, only to parlay their co-opting of judges and justices into excluding so much evidence and testimony that could be exculpatory. Still compulsory members have no idea that the Texas Bar will behave that way when the opportunity arises and the incentives to cancel exist. Plaintiff Robins certainly did not know, after years of detrimental reliance and misplaced trust while the Bar defendants

increasingly make a fortune each year out of the annual $60 million dollar Bar budget.

43. All Texans suffer either directly or indirectly from such predatory misdeeds. These transgressions directly and adversely affected Plaintiff Robins in ways for which he seeks redress, plus damages & attorney's fees. Although the Defendants rejected his ongoing request for license reinstatement and a restored ethically spotless license status, they have categorically denied it, making further settlement discussions futile. Meanwhile though:

## COUNT 2: COMMON LAW FRAUD

44. Plaintiff Robins hereby incorporates by reference the abovementioned assertions for inclusion in his descriptions of the remaining allegations & assertions.

45. The Bar defendants rrepresented to Plaintiff Robins that they are honest, dependable, supportive and the like, only to be anything but when they sense that their pot of gold is potentially threatened.

46. The Defendants' representations to Plaintiff Robins were material, intentional, reliance-inducing and ultimately harmful to him.

47. The Defendants' representations were false statements of fact that surprisingly enabled the Defendants to do considerable harm to Plaintiff Robins.

48. The Defendants made the false representations while aware of the risk that they would prove to be false.

49. Plaintiff Robins detrimentally relied on the defendants' false

representations, ultimately at considerable and ever-increasing expense.

22. The Defendants' false representations directly and proximately caused enduring injuries to the plaintiff, which resulted in plaintiffs' damages that are partially listed in this lawsuit.

23. The Plaintiff seeks unliquidated damages within the jurisdictional limits of this court.

## JURISDICTION & VENUE

44. This Court has jurisdiction over this case as Plaintiff Robins' claims involve encroachments upon his rights here in Harris County, Texas in violation of Texas' statutory authority.

45. Venue is similarly proper here, as well, pursuant to Tex. Civ. Prac. & Rem. Code § 15.002(a)(1), Tex. Bus. & Com. Code § 17.47(b). A substantial part of the events or omissions giving rise to the Plaintiff's claims occurred and continue to occur in Harris County, Texas. Venue is also proper because the Plaintiff resides in Harris County.

46. Houston also happens to be where the Texas Bar's very substantial facility at 4801 Woodway Dr #315w, Houston, TX 77056 remains located. The bar defendants required Plaintiff Robins to endure a near 5 hour deposition there regarding this dispute, in fact, before dragging him through a four day trial before a visiting judge here in Harris County.

## PRAYER FOR RELIEF

47. The Bar defendants should be held accountable and be compelled

to compensate Plaintiff Robins including with immediately and enduringly ceasing with maintaining its relevant sanctions against him (disbarment for a first time offender, who had never previously been prosecuted for anything by any state bar during his approximately 30 year career, and who has also never been convicted of any crime or even a traffic offense). The Defendants should also be compelled to make financial reparations including costs and attorney's fees available to Plaintiff Robins, as the relevant statutory provisions actually or potentially require. Plaintiff Robins previously had an ethically spotless bar ethics record.

**WHEREFORE,** Plaintiff Robins prays that this Court please issue the following relief:

a. A declaratory judgment requiring the bar defendants to reverse the Texas Bar's relevant disciplinary actions against him.

b. An order and judgment granting reasonable attorneys' fees, damages and costs as well as any other relief that this Court deems just and proper.

## PLAINTIFF'S SWORN DECLARATION

"My name is **Richard Robins**.   I am over the age of eighteen years old, and am of sound mind.   I have never been convicted of a misdemeanor or felony.   I am fully competent to attest to all of the facts set forth in this sworn declaration and accompanying lawsuit as I have personal knowledge regarding them.  I declare under penalty of perjury that the facts stated in this lawsuit are true & correct, to the best of my knowledge.

Executed on June 10th, 2025."


**Respectfully submitted**,

Rich Robins
(Pro se Plaintiff)
2450L ouisiana St. #400-155
Houston, TX 77006-2380
Rich@RichRobins.com
Tel. 832-350-1030

_____


**Respectfully submitted**:

 Rich Robins
Pro Se Plaintiff
2450 Louisiana St.  #400-155
Houston, TX   77006
Tel. 832-350-1030
Rich@RichRobins.com

No. 15-25-00144-CV

## **<u>CERTIFICATE OF SERVICE</u>**

      I do hereby certify that a true and correct copy of the above and foregoing Appellant's amended response will be served upon the Appellee by court-authorized electronic means pursuant to Texas Rule of Appellate Procedure 9.5 and also Rules 21 & 21a) of the Texas Rules of Civil Procedure on September 22nd, 2025.

Michael G. Graham
Appellate Counsel for the Appellee, the Commission for Lawyer Discipline
State Bar of Texas,
Box 12487
Austin, Texas 78711.
Tel. 512-427-1356
Michael.Graham@texasbar.com


    BY:

Rich Robins

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Rich Robins on behalf of Rich Robins
Bar No. 00789589
rich@RichRobins.com
Envelope ID: 105876962
Filing Code Description: Letter
Filing Description: Amended letter in opposition to transfer of case from 15th COA...
Status as of 9/22/2025 7:32 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michael Graham | 24113581 | Michael.Graham@TEXASBAR.COM | 9/22/2025 1:34:58 AM | SENT |